**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry STRONG, Defendant–Appellant.**

**No. 95–30113.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 8, 1995.*

Decided March 26, 1996.

---

1. Nor has my review of reported opinions to date revealed such a case.

\* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App. P. 34(a) and Ninth Circuit Rule 34–4.

Gregory A. Jackson, Jackson & Rice, Helena, Montana, for defendant-appellant.

Kris A. McLean, Assistant United States Attorney, Helena, Montana, for plaintiff-appellee.

Before D.W. NELSON, JOHN T. NOONAN, Jr., Circuit Judges, and ·TANNER, District Judge.**

D.W. NELSON, Circuit Judge:

Jerry Strong appeals his conviction for violating 36 C.F.R. § 261.10(c), which prohibits commercial activity on National Forest lands without special use authorization. He contends that there was insufficient evidence to support this conviction. We agree, and we therefore reverse.

## I. FACTS AND PROCEEDINGS BELOW

Strong is a licensed outfitter and holder of a United States Forest Use Permit. In January, 1992, Strong contracted with three hunters from Virginia, Blevins, Poe and Snavely (the "Virginians"), to outfit and guide them on a hunt which was to take place in the Bob Marshall Wilderness during two weeks in September, 1992. Strong made the

** Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation.

arrangements with Blevins, who was a long-time friend. Because Montana law required the Virginians to make a deposit to be eligible for special hunting licenses available to out-of-state hunters sponsored by a Montana-licensed outfitter, Strong accepted Blevins' offer of a horse in lieu of cash. On February 8, 1992, Blevins signed a bill of sale to Strong for the horse, and Strong eventually took delivery in the spring of 1993. Around mid-March, 1992, Strong procured the licenses from the Montana Department of Fish, Wildlife and Parks ("MDFWP"); the licenses were "out of state big game combination" licenses which indicated that the hunters were "outfitter-sponsored."

While at the time of this booking the Virginians intended their guided hunt to be in the Bob Marshall Wilderness, scheduling conflicts required them to abandon this plan. The Virginians rescheduled their outfitted/guided hunt to take place on the Missouri River Breaks ("MRB") for only one week during the second week of the general hunting season. They decided, however, to come to Montana a week before their scheduled hunt on the MRB to hunt on their own. Blevins thus asked Strong if he would assist them by indicating where he personally hunted and fished, and Strong agreed to do so. Strong and the Virginians finalized their plans in June, 1992.

The Virginians arrived in Montana around October 20, 1992. They brought their own vehicle, equipment, and enough supplies to last them through the first week. Strong took them sight-seeing, drove them to places in the Helena National Forest ("HNF") where they might find game, reviewed maps with them, helped them obtain permission to cross private land to gain access to public land, allowed them to hunt on property which he leased, and introduced them to his friends.

The Virginians hunted on their own that week while Strong was otherwise occupied. While hunting in the HNF, they encountered an MDFWP employee. When the Virginians mentioned Strong's name, the MDFWP employee asked whether Strong was their outfitter. The Virginians answered in the affirmative. As a result, the MDFWP employee contacted the Montana game warden to report illegal outfitting because no outfitting was permitted in the area where the Virginians were hunting. The game warden then contacted an officer with the United States Forest Service ("USFS") because the Virginians had been on national forest lands.

After this incident, one of Strong's friends took Blevins flying to locate elk. Strong went along, advising Blevins of potential hunting areas, but fuel costs were paid by the Virginians. Later, Blevins was successful in killing an elk. When he went to Strong's house to tell his friend of the success, Strong's wife invited the Virginians to stay for dinner.

Unbeknownst to them, Strong and the Virginians were under surveillance that night by the game warden and the USFS official. After dinner, these officials followed the Virginians back to their campsite and confronted them regarding possible illegal outfitting by Strong. The Virginians told the officials that they were hunting on their own and were not paying Strong to outfit or guide them that week. They further maintained that Strong was outfitting them for a hunt the following week, but mistakenly told the officials that they had not paid Strong a deposit. The game warden and the USFS officer subsequently confronted Strong and accused him of illegal outfitting/guiding, which Strong denied.

Strong then left with the Virginians for the planned outfitted hunt on the MRB. All three hunters paid Strong for this hunt at his customary rate pursuant to their contract. After this hunt, the Virginians hunted a few more days on their own before returning east.

In March, 1993, Strong was charged with violating 36 C.F.R. § 261.10(c), which prohibits the "[s]elling or offering for sale any merchandise or conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization" in the National Forest System. Strong

pled not guilty. Trial was held before the United States magistrate, and the court found Strong guilty of illegal guiding. On November 17, 1993, Strong was sentenced to one year of probation and fined $1,000. The district court affirmed the judgment and sentence.

## II. STANDARD OF REVIEW

 The standard of review when challenging the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Moreover, this court must assume that the district court resolved all evidentiary conflicts in favor of the judgment. *United States v. Alzate–Restreppo*, 890 F.2d 1061, 1064 (9th Cir.1989).

## III. DISCUSSION

The magistrate concluded that to find Strong guilty of violating 36 C.F.R. § 261.10(c), the government must prove both of the following elements beyond a reasonable doubt: 1) that Strong conducted some kind of work activity or service on National Forest lands, and 2) that Strong was not authorized by federal law, regulation or special use authorization to conduct that activity. The government attempted to prove that Strong provided commercial outfitting/guiding services to the Virginians for the first week of the hunting season, beginning October 25, 1992, in the HNF.[1]

The magistrate found that certain sections in the USFS Special Uses Handbook governed this case. Specifically, he relied on definitions provided in USFS Special Uses Handbook 2709.11 Section 41.53, which states

in part, "[e]xamples of outfitting/guiding services which require a special use authorization include packing [and] hunting." He also relied on Subsection 41.53c, which defines guiding as "[p]roviding, for pecuniary remuneration or other gain, services ... or otherwise assisting individuals or groups in their pursuit of a natural resource based outdoor activity."[2] Accordingly, the magistrate held that the government would have to show that Strong engaged in an activity covered by 36 C.F.R. § 261.10(c) "for pecuniary remuneration or other gain," *i.e.*, for consideration.

 We agree that 36 C.F.R. § 261.10(c) prohibits the specified activities only when they are engaged in for consideration. Like the magistrate, we base this conclusion in part on the aforementioned provisions of the USFS Handbook. We give deference to the specific policy determinations of an administrative agency unless they are arbitrary, capricious or manifestly contrary to statute. *ABF Freight System, Inc. v. N.L.R.B.*, —— U.S. ——, ——, 114 S.Ct. 835, 839, 127 L.Ed.2d 152 (1994). Moreover, we "must give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). This standard does not afford us the liberty of choosing which among several interpretations best serves the regulatory purpose. *Id.* Thus, Section 261.10(c) must be construed consistently with the USFS Handbook, and we therefore conclude that it reaches only those activities performed for consideration.

USFS Special Uses Handbook 2079.11 Section 41.53b[3] also supports our conclusion that 36 C.F.R. § 261.10(c) does not target

---

**1.** As Strong was duly licensed to provide outfitting services to the Virginians for their hunt on the MRB, the legality of his actions during the second week of the season is not disputed and does not form the basis for the charges against him.

**2.** While the USFS Special Uses Handbook also defines "outfitting," the magistrate apparently only found that Strong was engaged in guiding,

and thus made no reference to that subsection; however, the terms "outfitting" and "guiding" were used interchangeably below.

**3.** Section 41.53b provides in relevant part:
 "*Policy.* ...
 1. Work with state and local authorities, outfitters, and outfitter/guide organizations to identify and halt 'pirate' outfitter operations-that is, those operating without permits."

noncommercial or gratuitous activities. The policy statement of Section 41.53b suggests that uncompensated aid to friends is not the type of "pirate" outfitter activity that the government seeks to prohibit. As various government officials testified at Strong's trial, it is common practice in the hunting community to use one's knowledge and expertise to assist friends; section 261.10(c) does not bar commercial outfitters from participating in this customary activity despite the illegality of such activities in situations where the guide/outfitter receives consideration for the service. Thus, if Strong did not provide the services to the Virginians in connection with their hunt in the HNF for pecuniary or other consideration, then he did not engage in illegal outfitting and/or guiding in violation of 36 C.F.R. § 261.10(c).[4]

■ Strong does not dispute the government's contention that he provided various services to the Virginians in connection with their HNF hunt. He contends, however, that his assistance was a gift borne out of his long-standing friendship with one of the hunters. The government called two of the Virginians to testify at Strong's trial. Both men corroborated Strong's testimony that he was not paid to provide outfitting services in the HNF. No individual testified that Strong was compensated for any services he provided the Virginians during that week they hunted in the HNF.

The evidence clearly shows that consideration was furnished for an outfitted/guided hunt as hunting licenses were obtained which required consideration to have been paid to an outfitter, the licenses indicated that the holders were "outfitter-sponsored," and Strong certified that he would direct each applicant's hunting. None of this evidence, however, establishes *when* such outfitting and/or guiding services would be provided. This evidence merely establishes that Strong and the Virginians intended that an outfitter-sponsored hunt should occur at some time while the licenses were valid. This point is crucial to our decision.

The evidence does not support the magistrate's conclusion that Strong received "pecuniary remuneration" from the Virginians for guiding services specifically provided in connection with their HNF hunt. In reaching this conclusion, the magistrate failed to provide any factual findings that support attributing any of the consideration the Virginians paid Strong to his activities during the HNF hunt. Instead, the magistrate simply listed the various services that Strong provided without finding that consideration was specifically paid for these services, rather than for those rendered during the legally outfitted hunt on the MRB.

Moreover, the terms of the agreement between Strong and the Virginians for the MRB hunt support Strong's contention that his assistance during the Virginians' first week in Montana was gratuitous. Initially, when the Virginians intended to hunt in the Bob Marshall Wilderness, Strong quoted his set price of $2,500 for a ten-day hunt. (Later testimony makes clear that this was a per person charge.) Strong testified that his set price for a five-day hunt in the MRB is $1,200, including lodging. Thus, with the horse valued at $1,200 (or $400 per Virginian), the $700 cash per person which the Virginians paid to Strong plus the $100 per person that they paid for their lodging, the Virginians paid the usual $1,200 per person for the MRB hunt. The government produced no evidence contradicting this testimony. Therefore, we are unable to find any evidence that the compensation paid to Strong was intended for any services other than those relating to the outfitted hunt on the MRB.

The magistrate relied on the fact that the Virginians had obtained outfitter-sponsored big game combination licenses but only went deer hunting with Strong on the MRB. According to the magistrate, this indicated that the Virginians intended to go on an outfitter-sponsored big game hunt with Strong at another time and place. The magistrate

---

4. We note our disagreement with *United States v. Peterson*, 897 F.Supp. 499, 501 (D.Colo.1995), where the district court held that 36 C.F.R.

§ 261.10(c) bars specified activities irrespective of whether any consideration is exchanged for their performance.

then concluded that Strong was indeed providing guiding services for consideration while the Virginians were hunting in the HNF. This inference, however, ignores the fact that the Virginians originally planned to go elk/deer hunting in the Bob Marshall Wilderness and obtained their licenses in March, 1992 based on that plan. Testimony shows that the hunting plans were not finalized until June, 1992. Thus, the fact that the licenses were combination big game licenses does not provide adequate support for the government's assertion that Strong's assistance during the elk-hunting week in the HNF was part of the paid-for services.

Thus, viewing the evidence in the light most favorable to the prosecution and resolving any evidentiary conflicts in favor of the judgment, the evidence permits only a poorly supported inference that Strong provided assistance during the week of October 25, 1992, for consideration. Such a weak inference does not rise to the level of proof beyond a reasonable doubt. The uncontradicted evidence tends to show that Strong's assistance to the Virginians was motivated by friendship, rather than pecuniary gain. We conclude, therefore, that Strong's services to the Virginians in connection with their hunt in the HNF did not violate 36 C.F.R. § 261.10(c).

Our holding should not be read so broadly as to conclude that the government is bound by the parties' characterization of their agreement in determining whether a provider of services received any consideration for those services. Irrespective of the parties' assertions, the government may show that a provider of services received consideration in exchange for specific services. In the present case, however, the government failed to prove that Strong received consideration for his services during the Virginians' first week in Montana.

## IV. CONCLUSION

For the reasons stated above, we reverse the judgment of the district court.

**REVERSED.**