April BRANNAN, Plaintiff–Appellant,

v.

UNITED STUDENT AID FUNDS, INC., Defendant–Appellee.

No. 93–35555.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1994.

Decided Aug. 30, 1996.

Doug S. Gard, Center for NonProfit Legal Services, Inc., Medford, Oregon, for plaintiff-appellant.

K. Patrick Neill and Andrew G. Lewis, Hershner, Hunter, Moulton, Andrews & Neill, Eugene, Oregon, for defendant-appellee.

Before: FLETCHER, D.W. NELSON, and RYMER, Circuit Judges.

D.W. NELSON, Circuit Judge:

Appellant April Brannan seeks damages from appellee United Student Aid Funds, Inc. ("USA Funds"), claiming abusive collection practices in violation of the federal Fair Debt Collection Practices Act of 1977 ("FDCPA"), Pub.L. No. 95–109, 91 Stat. 874, codified as amended at 15 U.S.C. § 1692 *et seq.,* and in violation of the Oregon Unfair Debt Collection Practices Act ("Oregon UDCPA"), Or.Rev.Stat. §§ 646.639, 646.641. The district court granted summary judgment in favor of USA Funds on all claims, holding that USA Funds is exempt from liability under the "government actor" exemption to the FDCPA, 15 U.S.C. § 1692a(6)(C), and that the Higher Education Act ("HEA"), 20 U.S.C. § 1071–99, preempts the Oregon UDCPA. Brannan appeals both these rulings. On appeal, USA Funds raises the affirmative defense of FDCPA preemption of the Oregon UDCPA for the first time. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 1988, appellant April Brannan executed a promissory note with the Bank of Horton for a loan of $2,625 under the former Guaranteed Student Loan ("GSL") program [1] established by the HEA. USA Funds, a private guaranty agency [2] subject to the HEA and applicable regulations pursuant to its contracts with the United States Department of Education, guaranteed the loan. The Department of Education, in turn, insured the guaranty agency. After the lender's assignee declared Brannan in default and filed a default claim with USA Funds on May 24, 1991, USA Funds paid the loan in accord with its guarantee commitment [3] and began collection efforts, including mailing collection notices to Brannan and contacting her by telephone.

Brannan filed suit on September 1, 1992, alleging, *inter alia*, that USA Funds had violated the FDCPA and the Oregon UDCPA by threatening to cause her to lose her job, by communicating with third parties about the debt, and by refusing to communicate about the debt through her attorney. USA Funds counterclaimed on the underlying debt, claiming collection costs and attorney fees under the provisions of the promissory note.[4]

The district court granted summary judgment to USA Funds on all counts of Brannan's complaint and on USA Funds' counterclaim. It held that USA Funds is exempt from the FDCPA pursuant to the "government actor" exclusion, 15 U.S.C. § 1692a(6)(C). It also held that the HEA completely preempts the Oregon UDCPA.

1. The former GSL program is now the Federal Family Education Loan program, *see* 34 C.F.R. § 682.100(a) (1994), whereas the current GSL program encompasses loans guaranteed directly by the Department of Education, *see* 34 C.F.R. § 682.500 (1994).

2. The Department of Education regulations define a guarantee agency as "[a] State or private nonprofit organization that has an agreement with the Secretary to administer a loan guarantee program under the [Higher Education] Act." 34 C.F.R. § 682.200(b) (1991).

3. "If a borrower defaults on a loan, the guarantee agency or the Secretary reimburses the lend-

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1446 (9th Cir.1994). This case involves statutory construction, which is a question of law that we review de novo. *Hellon & Assoc., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir.1992). Preemption is also a matter of law subject to de novo review. *Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir.1991).

## DISCUSSION

### I. APPLICABILITY OF THE FAIR DEBT COLLECTION PRACTICES ACT

USA Funds concedes for the purposes of this appeal that it is a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6). However, USA Funds asserts that Congress did not intend for the FDCPA to apply to GSL guaranty agencies.

We hold that USA Funds is subject to the FDCPA. The FDCPA proscribes abusive collection practices by "any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* The FDCPA does not provide an exemption for guaranty agencies that acquire a student loan after default in order to pursue its collection. *See* § 1692 *et seq.* The Secretary of Education has also explicitly stated that GSL third party collectors and their collection activity "remain subject to the FDCPA." 55 Fed.Reg. 40120, 40121 (1990).

er for its loss. The guarantee agency or the Secretary then collects the amount owed from the borrower." 34 C.F.R. § 682.102(c)(4) (1991).

4. Brannan also sought a declaratory judgment regarding USA Funds' ability to recover collection costs that were calculated as a percentage of the debt. After USA Funds withdrew its claim for those costs, the district court ruled that paragraph VI of Brannan's promissory note entitles USA Funds to recover all actual collection costs. Brannan does not appeal this ruling.

## USA FUNDS AND THE GOVERNMENT ACTOR EXEMPTION

■ USA Funds contends and the district court held that a GSL guaranty agency is exempt from the FDCPA under § 1692a(6)(C), which exempts "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties."

■ Reversing the district court, we hold that USA Funds is not a government actor exempt from the FDCPA under § 1692a(6)(C). "[W]here a statute names the parties which come within its provisions, other unnamed parties are excluded." *Foxgord v. Hischemoeller*, 820 F.2d 1030, 1034 (9th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 502 (1987). This exemption applies only to an individual government official or employee who collects debts as part of his government employment responsibilities. USA Funds is a private nonprofit organization with a government contract; it is not a government agency or employee.

## II. HEA PREEMPTION OF THE OREGON UDCPA

■ USA Funds contends and the district court held that the HEA preempts the application of the Oregon UDCPA. Or.Rev.Stat. § 646.639. We agree. Although the HEA does not preempt all state law governing lenders and guarantors of student loans, it does preempt state law inconsistent with the GSL regulations governing a third-party debt collector's pre-litigation collection activities. *See* 55 Fed.Reg. at 40121–2.

### A. PREEMPTION AND DEFERENCE TO AGENCY INTERPRETATION

"The Supremacy Clause of Article VI of the Constitution provides Congress with the power to preempt state law." *Independent Energy Producers Ass'n, Inc. v. California Pub. Util. Comm'n*, 36 F.3d 848, 853 (9th Cir.1994). Preemption can occur in a number of circumstances, including " 'where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.' " *Id.* (quoting *Louisiana Pub.*

*Serv. Comm'n v. FCC*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)). " 'Preemption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.' " *Id.* (quoting *Louisiana Pub. Serv. Comm'n*, 476 U.S. at 369, 106 S.Ct. at 1898–99).

■ The Secretary of Education has promulgated an official interpretation stating that regulations issued under 20 U.S.C. § 1082(a) preempt inconsistent state law governing pre-litigation collection activities by third-party debt collectors. We defer to the specific policy decisions of an administrative agency unless they are arbitrary, capricious or manifestly contrary to statute. *United States v. Strong*, 79 F.3d 925, 928 (9th Cir. 1996) (citation omitted). We "must give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala*, —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (citations omitted). "Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Id.*

### B. THE GSL REGULATIONS AND STATE LAW

■ The Secretary concludes that the GSL regulations governing pre-litigation collection activity preempt all inconsistent state law, including case law, statutes and regulations. 55 Fed.Reg. at 40120–21 (*citing* 20 U.S.C. §§ 1078(c), 1080(a),(b); 34 C.F.R. §§ 682.410(b)(4)(i)-(vi), (xii), 682.411(c)-(h)). According to the Secretary, state law is inconsistent with the GSL regulations when it "would prohibit, restrict, or impose burdens" on pre-litigation collection activity by third parties. Thus, the scope of preemption extends to "*any* State law that would hinder or prohibit *any* activity taken by these third parties." *Id.* at 40121 (emph. added).

The Secretary notes that preemption in this area expressly serves "the congressional

intention implemented in these regulations:" that the Secretary establish an effective due diligence standard for collection activity. *Id.* Subjecting lenders and loan collectors to state law restrictions on pre-litigation collection activity would make GSL loan holders reluctant to exercise due diligence in loan collection. *Id.* In fact, the Secretary adds, exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans. *Id.*

The Secretary emphasizes that this narrow sphere of preemption has disadvantaged neither the states nor the public interest. The preemption of state law restrictions on pre-litigation collection activity "imposed no added costs on States" and did not infringe on state sovereignty in the conduct of litigation or the enforcement of judgments. *Id.* The subject of regulation-GSL loan collection-did not intrude into transactions in which the Federal Government had no direct involvement, but was instead "narrowly tailored" to apply to situations in which the federal government alone had already given financial benefits to borrowers and was in a position to incur even greater costs because of default. *Id.* Moreover, preemption did not leave borrowers without remedy should debt collectors engage in improper loan collection activity; while the GSL regulations preclude liability under inconsistent state law, "significant Federal protection for GSL debtors remains under the FDCPA." *Id.*

The Secretary recognizes that there are some competing state interests, but he makes clear that in accordance with the congressional intent embodied in the HEA, the public interest in having a stable student loan program is greater. For years, high default rates have been a serious threat to the continued viability of the GSL program. The interpretation concludes that

> [g]iven the strength of the public interest in preventing the need for Federal payments on defaulted loans, and in recovering those amounts after payment has been made, the Secretary believed at the time these regulations were promulgated, and continues to believe, that any balancing of interests between appropriate State regu-

lation of collection actions on private debts and the need for a uniform minimum national standard of collection action on publicly-financed loan debts tips decidedly in favor of diligent student loan collection. *Id.*

## C. THE VALIDITY OF THE SECRETARY'S INTERPRETATION

One of the HEA's express purposes was to stabilize the GSL program by cutting the significant losses to the U.S. Treasury due to the "costs and occurrences of defaults in the program." H.R.Rep. No. 383, 99th Cong., 2nd Sess. 4, *reprinted in* 1986 U.S.C.C.A.N. 2606. To this end, Congress directed the Secretary to establish minimum uniform due diligence requirements for loan collection, 20 U.S.C. § 1078, and authorized the Secretary to "prescribe such regulations as may be necessary to carry out the purposes" of the GSL program. 20 U.S.C. § 1082(a)(1). Because Congress has delegated to the Secretary its authority to implement the provisions of the HEA, the Secretary

> "is uniquely qualified to determine whether a particular form of state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' . . . and therefore, whether it should be preempted." *Medtronic, Inc. v. Lora Lohr,* —— U.S. ——, ——, 116 S.Ct. 2240, 2255, 135 L.Ed.2d 700 (1996) (citation omitted).

The Secretary's implementation of congressional intent is not arbitrary, capricious, or manifestly contrary to statute. The Secretary's regulations and interpretation ensure that loan collectors will be governed by one uniform standard for pre-litigation loan collection. If student loan guarantors were exposed to liability under fifty different sets of statutes, regulations and case law, conducting diligent pre-litigation collection activity could be an extremely uncertain and risky enterprise. Exposure to liability under state law would provide a significant disincentive to pursue loan collection, and the cost advantages gained by concentrating GSL loan collection in a centrally-administered system would be lost. Preemption does deprive some defaulters of the ability to receive

damages under state law; however, the congressional purpose in enacting the HEA was not to make it easier for defaulters to get money from loan collectors, but to protect the millions of students who would suffer irremediable loss if Congress had to shut down the GSL program.

Subsequent developments in the GSL program have shown the full force of the government's commitment to stabilize the GSL program by strengthening loan collection activity. In 1992, Congress amended § 1082(a)(1) to make its stated purpose even more explicit in the law-the Secretary's power to prescribe necessary regulations now expressly "includ[es] regulations applicable to third party servicers." Then, after years of "hemorraghing," *see*, "Stopping Loan Defaults," *Wash. Post*, at A22 (quoting the Secretary), in 1993 the government credited "tougher collection methods" as a main reason for a rapid decline in loan defaults. "Student Loan Defaults Down Due to Collection Methods," *Portland Oregonian*, July 20, 1993, at A6; *see also* "College Loan Defaults are Down," *Chicago Tribune*, July 20, 1993, at 8. Collection rates have continued to improve as the government has taken even stronger collection measures against defaulters. "Stopping Loan Defaults," *Wash. Post*, at A22. Clearly, maximizing the potential liability of loan collectors has not been a significant purpose behind GSL reform.

Upholding the Secretary's interpretation of congressional intent and the GSL regulations is not inconsistent with our holding in *Keams v. Tempe Technical Institute, Inc.*, 39 F.3d 222 (9th Cir.1994). The issue in *Keams* was whether the HEA preempted state tort suits against accrediting agencies. The Secretary's regulations with respect to accreditors were far more limited in scope than those governing loan collectors; the accreditor regulations merely provided a procedure for "determining whether to place an accrediting agency on the approved list." *Id.* at 226. The Secretary had not been charged with establishing minimum standards for how accrediting agencies conduct their activity, and the Secretary had not issued any interpretation stating that the accreditor regulations preempt state law. Accordingly, we rea-

soned that state lawsuits could assist the Secretary in evaluating particular accrediting agencies, which would be operating under state law standards. Because state law did not stand " 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' ", it was not preempted by the HEA. *Id.* (quoting *California v. ARC America Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989)).

The present case concerns a different set of circumstances. Here, Congress has explicitly authorized the Secretary to "prescribe such regulations as may be necessary" to establish a uniform national standard for debt collection activity. 20 U.S.C. § 1082(a)(1). Consistent with the congressional charge, the Secretary has issued a regulatory framework for pre-litigation loan collection and has explained why recognizing liability under inconsistent state law "would thwart the congressional intention implemented in [the GSL] regulations." 55 Fed. Reg. at 40121. Because the Secretary's regulations and interpretation are reasonable and not inconsistent with the statute, we defer to the Secretary's policy determinations.

The Supreme Court's recent *Medtronic* holding also does not preclude preemption. *See* —— U.S. at ——, 116 S.Ct. at 2257 (statutory and regulatory language at issue in *Medtronic* do not preclude general state requirements from ever being preempted). Like the GSL regulations, the FDA regulations were issued in accordance with the congressional grant of authority under the relevant statute. *See id.* at ——, 116 S.Ct. at 2255. In contrast, however, the FDA regulations expressly state that they do " 'not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act.' " *Id.* at ——, 116 S.Ct. at 2256 (citing 21 C.F.R. § 808.1(d)(2)(1995)). The FDA regulations also expressly provide that the coordinate statute does not preempt State unfair trade practices law. *Id.* at ——, 116 S.Ct. at 2257.

The interests addressed by the FDA regulations differ substantially from those of the GSL regulations. The GSL regulations con-

cern a federal student loan program which requires uniformly administered collection standards in order to remain viable. In contrast, the FDA regulations touch upon purely private interests: the liability of manufacturers for defects in privately-produced goods.

### D. THE GSL REGULATIONS AND OREGON LAW

Whereas the GSL regulations establish what the loan collector must do in order to show due diligence, the Oregon UDCPA consists entirely of restrictions and prohibitions on collection activity. 34 C.F.R. §§ 682.410(b)(4)(i)-(vi),(xii), 682.411(c)-(h); Or.Rev.Stat. § 646.639(2). For example, the GSL regulations establish that the debt collector shall diligently attempt to collect the loan by telephone and in writing throughout the first three forty-five day periods after default. 34 C.F.R. § 682.410(b)(4)(i)-(v). Then, in the fourth forty-five day period, the agency must send a written notice "forcefully" demanding payment. 34 C.F.R. § 682.410(b)(4)(vi). In contrast, the Oregon UDCPA consists of a list of collection practices that "[i]t shall be unlawful" for a debt collector to do. Or.Rev.Stat. § 646.639(2).

The preemptive effect of the GSL regulations is clear. The GSL regulations preempt "State law that would prohibit, restrict, or impose burdens" on the sequence of pre-litigation contacts required by the GSL regulations; thus, "preemption includes *any* State law that would hinder or prohibit *any* activity" taken by third-party debt collectors prior to litigation. 55 Fed.Reg. at 41021 (emph. added). Because the Oregon UDCPA consists of nothing but prohibitions, restrictions and burdens on collection activity, it is preempted. If a student loan defaulter in Oregon believes that a third-party debt collector has engaged in unfair pre-litigation debt collection activity, her remedy lies in the FDCPA, not the Oregon UDCPA. *Id.* ("while the GSL regulations preempt inconsistent State laws regarding pre-litigation collection activity, significant Federal protection for GSL debtors remains under the FDCPA").

### III. FDCPA PREEMPTION OF THE OREGON UDCPA

On appeal, USA Funds raises for the first time its claim that the FDCPA itself preempts application of the Oregon UDCPA. This is a choice-of-law claim for avoidance of liability, rather than a choice-of-forum claim. *See* Fed.R.Civ.P. 8(c); *Piekarski v. Home Owners Savings Bank*, 956 F.2d 1484, 1489 (8th Cir.), *cert. denied*, 506 U.S. 872, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992). Failure to raise an affirmative defense below results in waiver. *See, e.g., Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir.1984); *Santos v. Alaska Bar Ass'n*, 618 F.2d 575, 576–77 (9th Cir.1980). In particular, a choice-of-law preemption defense is waived if not raised below: only preemption issues affecting the choice of forum and thus raising questions of the court's jurisdiction may be raised for the first time on appeal. *Johnson v. Armored Transport of California, Inc.*, 813 F.2d 1041, 1043 (9th Cir.1987); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir.1986). For these reasons, we decline to address this issue.

### CONCLUSION

We hold that USA Funds, as a private guaranty agency under contract with the federal Department of Education to guarantee student loans, is subject to the FDCPA. We also hold that the HEA and the GSL regulations preempt the Oregon UDCPA. Therefore, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this Opinion.

FLETCHER, Circuit Judge, concurring and dissenting:

I concur in the portion of the opinion that holds that United Student Aid Funds is not exempt from liability under the "Government Actor" exemption to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6)(C). I respectfully dissent, however, from the portion that holds that the Higher Education Act, 20 U.S.C. § 1071–99, preempts the Oregon Unfair Debt Collection Practices Act.

United Student Aid Funds concedes that it is a "debt collector" under the FDCPA. We

hold that it is not a "Government actor" so that it is not exempt from compliance with the FDCPA requirements. The majority agrees that the HEA does not trump or preempt the FDCPA, since nothing in either statute suggests preemption of the other. The Oregon UDCPA provides that compliance with the FDCPA *is* compliance with Oregon's UDCPA. Or.Rev.Stat. § 646.643. All that can be at issue, then, in this case is whether the remedies available to the borrower, provided in the Oregon Act, applicable if the debt collector has violated the FDCPA, are preempted by the HEA. There appears to be no conflict between the HEA and the Oregon Act in *this* aspect of the UDCPA unless we were to hold that any remedy of the borrower against the debt collector for violation of the FDCPA is in conflict with the Secretary's HEA regulations.

In deciding whether the HEA preempts the Oregon UDCPA, "[O]ur sole task is to ascertain the intent of Congress." *Keams v. Tempe Technical Institute, Inc.*, 39 F.3d 222, 225 (9th Cir.1994) (quoting *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987)). Since Congress did not expressly preempt state law in the area of debt collection, the majority must rely on one or the other of the two remaining ways to find preemption: either that "Congress intended to occupy the entire field, leaving no room for the operation of state law," *id.* at 225, or that "compliance with both state and federal law would be impossible, or state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.*

The first rationale has been foreclosed by *Keams*. The question in *Keams* was whether the HEA preempted state torts suits against accrediting agencies. In holding that it did not, we emphasized the fact that the HEA, i.e. Congress, *did* expressly preempt state law in a number of areas. *Id.* (citing 20 U.S.C. § 1099 (loans not subject to state disclosure requirements); 20 U.S.C. § 1078(d) (state usury laws inapplicable); 20 U.S.C. § 1091a(a) (state statutes of limitations inapplicable); 20 U.S.C. § 1091a(b) (state infancy defenses unavailable)).

These express provisions for preemption of some state laws imply that *Congress intentionally did not preempt state law generally, or in respects other than those it addressed.* When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to preempt state laws from the substantive provisions of the legislation.

*Id.* (internal quotation omitted) (emphasis added). We rejected any inference of preemption based upon congressional intent to occupy the entire field. *Id.* "It is apparent from the language of the express preemption clauses that Congress expected state law to operate in much of the field in which it was legislating." *Id.* at 225–26. Because state laws regulating pre-litigation debt collection activities similarly are not expressly preempted by the HEA, I conclude that Congress did not intend to occupy the entire field in the area of pre-litigation debt collection activities.

The majority appears to rely on the second rationale for preemption: that state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. However, this rationale was rejected by the court in *Keams* with respect to negligence suits against accrediting agencies. It should similarly be rejected here.

There is a "'presumption against finding pre-emption of state laws in areas traditionally regulated by the States.'" *Id.* at 225 (quoting *California v. ARC America Corp.*, 490 U.S. 93, 101, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989)). As the Supreme Court has recently reiterated,

[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has legislated ... in a field which the States have traditionally occupied, we start with

the assumption that the historic police powers of the States were not to be superceded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Medtronic, Inc. v. Lohr,* — U.S. —, —, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996) (citations and internal quotation marks omitted). Regulation to prevent the deception or harassment of consumers is plainly within such an area of traditional state regulation. *See, e.g., Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) (regulation to prevent deceptive practices). Yet the majority opinion appears categorically to hold that *all* state laws that prohibit debt collectors from doing *anything* related to pre-litigation federal debt collection are preempted as "inconsistent" with the HEA-regardless of the content of the state law.

This categorical approach is simply wrong. Absent a conclusion that Congress intended to occupy the entire field of pre-litigation debt collection activities, a position the majority appears properly to disclaim, we must look to the particular state law provision by provision in order to determine whether any provision is inconsistent with the HEA.

The majority relies heavily on the Secretary's Federal Register announcement to find preemption. However, preemption is a matter of *Congressional intent,* not the Secretary's. *See Keams,* 39 F.3d at 225; *California Fed. Sav. & Loan Ass'n,* 479 U.S. at 280, 107 S.Ct. at 689. To be sure, " 'a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.' " *Independent Energy Producers Ass'n v. California Pub. Util. Comm'n,* 36 F.3d 848, 853 (9th Cir.1994) (quoting *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1898– 99, 90 L.Ed.2d 369 (1986)). Thus, if the Secretary issued a regulation requiring a guarantor to contact a defaulted debtor at least once every three months, and a state law forbad contact more than twice a year, presumably the state law would be preempted. There is, however, no such allegation in the instant case. USA Funds does not contend that it is impossible to comply with both

a particular GSL regulation and the Oregon UDCPA.

Ordinarily, when a statute is silent or ambiguous with respect to a particular issue, we defer to an agency's reasonable interpretation of the statute. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

We accord deference to agencies under *Chevron* ... because of a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.

*Smiley v. Citibank (South Dakota), N.A.,* — U.S. —, —, 116 S.Ct. 1730, 1733, 135 L.Ed.2d 25 (1996). These general principles do not readily apply in the preemption context. In evaluating a statute's preemptive effect, we presume that Congress does *not* intend to preempt in areas traditionally regulated by the state absent a clear manifestation of intent to the contrary. *Medtronic,* — U.S. at —, 116 S.Ct. at 2250. Thus, if Congress is silent as to its intent to preempt, we ordinarily find no preemption, especially where, as here, Congress has expressly preempted state law in other areas. *Keams,* 39 F.3d at 225. In such a situation, there is no reason to defer to an agency interpretation. *Cf. Smiley,* — U.S. at —, 116 S.Ct. at 1735 ("We may assume (without deciding) that the [question of whether a statute is preemptive] must always be decided *de novo* by the courts."); *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781 ("If the intent of Congress is clear, that is the end of the matter.").

Even assuming arguendo that some deference to the agency's interpretation is appropriate in this case, I still disagree with the majority's preemption analysis. The majority cites the Secretary for the proposition that "preemption includes *any* State law that would hinder or prohibit *any* activity" taken by third-party debt collectors prior to litigation. Maj. Op. at 1266 (citing 55 Fed.Reg. at 41021). "Because the Oregon UDCPA consists of nothing but prohibitions, restrictions

and burdens on collection activity, it is preempted." *Id.* This is an overbroad interpretation of the regulations and of the scope of HEA preemption. The Secretary's pronouncement is in a section entitled "Contacts With Borrowers by Demand Letters and Telephone Calls." 55 Fed.Reg. at 41021. It explains that "the Department's regulations require lenders and agencies to make a number of contacts with the borrower directly, at specified intervals, using particular warnings to attempt to persuade the borrower to repay the loan." *Id.* It continues, "These provisions therefore preempt State law that would prohibit, restrict, or impose burdens *on the completion of that sequence of contacts ....*" *Id.* (emphasis added). "[T]his preemption includes any State law that would hinder or prohibit any activity taken by these third parties *to complete these required steps.*" *Id.* (emphasis added). Thus, contrary to the majority's suggestion, the regulations do not purport to preempt *all* state laws that prohibit, restrict, or impose burdens on activity taken by third-party debt collectors prior to litigation, but only those state laws that prohibit, restrict or impose burdens on activity taken by third parties *to complete these required steps.* Only those state laws that prohibit or burden compliance with the HEA or GSL regulations are preempted.

There are many provisions of the Oregon UDCPA that in no way prohibit or burden compliance with the HEA or GSL regulations. For instance, the Oregon UDCPA prohibits a debt collector, while collecting or attempting to collect a debt, from "us[ing] or threaten[ing] the use of force or violence to cause physical harm to a debtor or to the debtor's family or property." Or.Rev.Stat. § 646.639(2)(a). It also prohibits a debt collector from "us[ing] profane, obscene or abusive language in communicating with a debtor or the debtor's family." *Id.* § 646.639(2)(d). Yet, by concluding that the entire Oregon UDCPA is preempted, the majority inexplicably finds these statutory provisions "inconsistent" with the HEA and its implementing regulations.

How can that be? All that the HEA says about debt collection is that the guaranty agreement shall "assure that due diligence

will be exercised in the collection of loans insured under the program." 20 U.S.C. § 1078(c)(2)(A). There is nothing inconsistent about requiring a guarantor to use "due diligence" in attempting to collect the loan but telling the guarantor to refrain from using violence or abusive language in doing so. "Due diligence" does not mean collection by any means possible-no matter how abusive and unfair. In fact, in the federal Fair Debt Collection Practices Act (FDCPA), Congress explicitly concluded that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c). Accordingly, Congress enacted legislation "to eliminate abusive debt collection practices by debt collectors ... and to promote consistent State action to protect consumers against debt collection abuses." *Id.* § 1692(e). There is no exception for pre-litigation student loan debt collection. In light of Congress's express pronouncement in the FDCPA that abusive and misleading debt collection practices are *not* necessary to effective debt collection, I do not understand how a state statute prohibiting violence, abusive language, and misrepresentations in collecting debts can be deemed inconsistent with Congress's desire effectively to collect unpaid student debts under the HEA. The purpose of the HEA is to provide deserving students with loans so that they are able to attend college. Preserving the solvency of the program is a necessary means to that end. Abusive and misleading pre-litigation practices by debt collectors attempting to collect student loans in no way further these goals, and are certainly not required or encouraged by the GSL regulations. The effect of today's majority opinion is to free institutions not subject to the FDCPA but which collect student loans from regulation against violent or abusive practices and to free those subject to the FDCPA from state borrower remedies that are intended to discourage such practices.

USA Funds "ha[s] not demonstrated that preemption of [Brannan's Oregon UDCPA claims] was the 'clear and manifest purpose of Congress.'" *Kearns*, 39 F.3d at 227 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447

(1947)). We should reverse the district court's ruling that finds complete preemption.