# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEFFREY A. ROWE,
              *Plaintiff-Appellant,*

v.

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION, a foreign non-profit
Minnesota corporation,
              *Defendant-Appellee.*

No. 07-35046

D.C. No.
CV-06-01131-HO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, District Judge, Presiding

Argued and Submitted
November 20, 2008—Portland, Oregon

Filed March 18, 2009

Before: William A. Fletcher and Raymond C. Fisher,
Circuit Judges, and Charles R. Breyer,* District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable Charles R. Breyer, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

Terrance J. Slominski, Slominski & Associates, Tigard, Oregon, for the appellant.

Stephen T. Tweet, Albert & Twett LLP, Salem, Oregon, Curtis P. Zaun, Education Credit Management, St. Paul, Minnesota, for the appellee.

Teal Luthy Miller, U.S. Department of Justice, Washington, D.C., for the amicus curiae.

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiff Jeffrey Rowe brought suit in federal district court against Educational Credit Management Corporation

("ECMC"), alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA") and of Oregon state law. The court dismissed plaintiff's federal claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on the ground that defendant's collection activity was "incidental to a bona fide fiduciary obligation" and therefore not subject to the FDCPA, 15 U.S.C. § 1692a(6)(F)(i), and dismissed without prejudice Rowe's state law claims under 28 U.S.C. § 1367(c). We reverse and remand.

## I.   Background

According to the complaint, Rowe borrowed $2,500 from Jackson County Federal Savings and Loan pursuant to a student loan agreement. The loan was guaranteed by the Oregon State Scholarship Commission ("OSSC"). After graduation, Rowe defaulted on the loan. The OSSC then "turned over and assigned this account to [ECMC] for collection." ECMC sought collection of Rowe's defaulted loan by administratively garnishing Rowe's wages. According to the complaint, Rowe repaid his loan in full on July 18, 2005, but ECMC continued to garnish his wages through November 9 of that year.

Rowe sued ECMC in federal district court, alleging violations of the FDCPA, 15 U.S.C. §§ 1692e(2), 1692e(5), 1692f(1), 1692f(6), the Oregon Unfair Debt Collection Practices Act ("OUDCPA"), Or. Rev. Stat. § 646.639, and Oregon law of conversion. ECMC moved to dismiss Rowe's FDCPA claim under Rule 12(b)(6) for failure to state a claim. ECMC contended that its collection activity was not covered by the FDCPA because it was "incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). In the alternative, ECMC contended that its collection activity was not covered because it "concern[ed] a debt which was originated by" ECMC. *Id.* § 1692a(6)(F)(ii).

The district court granted ECMC's motion to dismiss, holding that ECMC was a "guaranty agency" under the federal

Higher Education Act, and that its collection activities were "incidental to a bona fide fiduciary obligation" within the meaning of the FDCPA. The court did not reach ECMC's other contention. The court dismissed the state law claims without prejudice under 28 U.S.C. § 1367(c). Rowe timely appealed.

## II. Standard of Review

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "[W]e accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.*

## III. Discussion

### A. Legal Backdrop of FDCPA Claims

[1] Congress passed the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1071, *et seq.*, to " 'keep the college door open to all students of ability,' regardless of socioeconomic background." *Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F. Supp. 2d 1161, 1162-63 (N.D. Ala. 1999); *see* 20 U.S.C. § 1070(a). Among other things, the HEA established the Federal Family Education Loan Program ("FFELP"),[1] administered by the Department of Education ("DOE"). *See* 20 U.S.C. § 1071. The DOE has promulgated regulations to implement the FFELP. *See College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 590 (4th Cir. 2005); 20 U.S.C. § 1082(a)(1).

[2] "Under the HEA, eligible lenders make guaranteed loans on favorable terms to students or parents to help finance student education. The loans are typically guaranteed by guaranty agencies" and are ultimately reinsured by the DOE. *Pel-*

---

[1]Prior to 1992, FFELP was typically referred to as the Guaranty Student Loan Program. *Pelfrey*, 71 F. Supp. 2d at 1163 n.1.

*frey*, 71 F. Supp. 2d at 1163. A "guaranty agency" is defined in the FFELP regulations as "[a] state or private nonprofit organization that has an agreement with the Secretary under which it will administer a loan guarantee program under the [Higher Education] Act." 34 C.F.R. § 682.200; *see also id.* § 682.401(a) ("In order to participate in the FFEL programs, a guaranty agency shall enter into a basic agreement with the Secretary."). "In essence [a guaranty agency] is an intermediary between the United States and the lender of the student loan. The United States is the loan guarantor of last resort. [The guaranty agency] assists the United States in performing that function." *Great Lakes Higher Educ. Corp. v. Cavazos*, 911 F.2d 10, 15 (7th Cir. 1990).

**[3]** One of the functions assigned to lenders and guaranty agencies under FFELP regulations is collection on defaulted student loans. When a borrower defaults on a loan, the lender is required to engage in a series of "due diligence" activities to try to get the borrower to repay the loan. 34 C.F.R. § 682.411. If the lender is unable to collect the debt despite complying with its due diligence requirements, the lender files a claim with the guaranty agency. *Id.* § 682.412(e)(2). The guaranty agency acts as a guarantor, paying the lender the unpaid balance of the defaulted loan. The guaranty agency is then assigned the loan by the lender. *Id.* § 682.410(b)(5) (vi)(A). In turn, guaranty agencies have various agreements with the DOE.

**[4]** Depending on the precise agreement between a guaranty agency and the DOE, the agency can recover from the DOE 80 to 100 percent of its losses resulting from a defaulted loan, provided that the guaranty agency engages in "due diligence" in seeking to recover on the defaulted loan. 20 U.S.C. § 1078(c); 34 C.F.R. § 682.410. A guaranty agency's due diligence requirements include locating the defaulting borrower, offsetting federal and state tax refunds against money owed by the borrower, initiating administrative garnishment proceedings against the borrower, and filing suit against the bor-

rower. 34 C.F.R. § 682.410(b)(6)(i)-(iv). Within 45 days of paying the default claim of a lender, a guaranty agency must notify the defaulting borrower that "if he or she does not make repayment arrangements acceptable to the agency, the agency will promptly initiate procedures to collect the debt." *Id.* § 682.410(b)(6)(v). The agency must notify the borrower of the various measures the agency may take "at the discretion of the agency," including offset of a tax refund, administrative garnishment and civil suit. *Id.*

**[5]** The FDCPA, 15 U.S.C. § 1692 *et seq.*, was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA regulates the collection of "debts" by "debt collectors" by regulating the number and type of contacts a debt collector may make with the debtor. The requirements imposed on a "guaranty agency" under the HEA and on a "debt collector" under the FDCPA are not entirely consistent.

### B.    Analysis of FDCPA Claims

The question before us is whether ECMC is a "debt collector" within the meaning of the FDCPA.

**[6]** The FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). The FDCPA provides for a number of exceptions from the term "debt collector." Among them are:

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties; . . .

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; [or] (ii) concerns a debt which was originated by such person[.]

15 U.S.C. §§ 1692a(6)(C), (F)(i)-(ii). Further, a "creditor" is not a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6)(A); *Montgomery v. Huntington Bank*, 346 F.3d 693, 698-99 (6th Cir. 2003).

ECMC contends that it is a guaranty agency under the HEA. Based on this conclusion it argues on three grounds that it is not a "debt collector" and that its collection activities are therefore not subject to the FDCPA. First, ECMC argues that its collection activity is "incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). The district court held for ECMC on this ground. Second, ECMC argues that its collection activity "concerns a debt which was originated by" ECMC. *Id.* § 1692a(6)(F)(ii). ECMC made this contention in the district court, but the court did not reach that issue. Third, ECMC argues that it is a "creditor" rather than a debt collector. *Id.* §§ 1692a(4), 1692a(6)(A). ECMC makes this contention for the first time in this court. The United States has submitted an amicus brief in this court in support of ECMC arguing only the first two grounds. For the reasons that follow, based on the allegations in the complaint, we disagree with the district court's conclusion that ECMC was not covered by the FDCPA because its collection activity was "incidental to a bona fide fiduciary obligation." We do not reach ECMC's second and third arguments and remand to the district court.

Rowe makes essentially two arguments. First, Rowe argues that in *Brannan v. United States Aid Funds, Inc.*, 94 F.3d 1260, 1263 (9th Cir. 1996), we held categorically that collection activities of guaranty agencies under the HEA are subject to the FDCPA. The precise question before us in *Brannan* was whether a guaranty agency was exempt from the FDCPA under the "government actor" exception to the definition of "debt collector." 15 U.S.C. § 1692a(6)(C). We held that it was not exempt under this exception. In so holding, we wrote:

> We hold that USA Funds is subject to the FDCPA. The FDCPA proscribes abusive collection practices by "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." . . . *The FDCPA does not provide an exemption for guaranty agencies that acquire a student loan after default in order to pursue its collection.*

*Brannan*, 94 F.3d at 1262 (emphasis added).

**[7]** Rowe relies on the italicized sentence to argue that in *Brannan* we reached beyond the "government actor" exception to the definition of "debt collector" in the FDCPA, and that we held that *none* of the exceptions to the definition applies to a guaranty agency under the HEA. We do not read this single sentence in *Brannan* as deciding questions not then before us. We conclude that *Brannan* should be read as deciding only that the "government actor" exception does not apply to a guaranty agency.

Second, Rowe argues, independent of our holding in *Brannan*, that the FDCPA's exception for collection activities "incidental to a bona fide fiduciary obligation" does not apply to ECMC's activities in this case. Construing the allegations in Rowe's complaint in accordance with Federal Rule of Civil Procedure 8(a), we agree with Rowe.

**[8]** There is no dispute in this case that, at least generally speaking, ECMC is a guaranty agency. In a memorandum opposing ECMC's motion to dismiss in the district court, Rowe conceded that "ECMC is a guaranty agency that acquired Plaintiff's loan after it was in default and pursued collection activities on it[.]" "Memoranda of points and authorities as well as briefs and oral arguments . . . are not considered matters outside the pleadings." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982) (quoting 5 Wright & Miller, Federal Practice & Procedure § 1366 (1969)). But the question is not whether, generally speaking, ECMC is a guaranty agency. Rather, the question is whether, in this particular case, ECMC was acting as a guaranty agency under the HEA or merely as a collection agent.

**[9]** Two requirements must be satisfied for an entity to come within the exception to the FDCPA for collection activities "incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). First, the entity must have a "fiduciary obligation." Second, the entity's collection activity must be "incidental to" its "fiduciary obligation."

**[10]** "The starting point for our interpretation of a statute is always its plain language." *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 953 (9th Cir. 2007) (internal quotation marks omitted). To determine plain language we consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Neither "fiduciary obligation" nor "incidental to" is defined in the FDCPA.

### 1.   "Fiduciary Obligation" to the DOE

**[11]** The first requirement is that an entity must have a "fiduciary obligation." Black's Law Dictionary defines a "fiduciary" as "[o]ne who must exercise a high standard of care in

managing another's money or property." Black's Law Dictionary (8th ed. 2004). It defines "fiduciary duty" as:

> A duty of utmost good faith, trust, confidence, and candor owed by a fiduciary (such as a lawyer or corporate officer) to the beneficiary (such as a lawyer's client or a shareholder); a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person (such as the duty that one partner owes to another).

*Id.*

ECMC argues that a guaranty agency owes a fiduciary obligation to the DOE because it is acting in the interest of the DOE in administering the FFELP. We agree. The nature of the relationship between a guaranty agency and the DOE is evidenced by the detailed regulations promulgated by the DOE. We have previously noted the highly regulated nature of guaranty agencies, stating that "guaranty agencies are essentially the creatures of regulatory agreements and federal regulations." *Student Loan Fund of Idaho, Inc. v. U.S. Dep't of Educ.*, 272 F.3d 1155, 1162 (9th Cir. 2001). *See also Games v. Cavazos*, 737 F. Supp. 1368, 1383-84 (D. Del. 1990) (describing the "highly regulated" relationship between a guaranty agency and the DOE).

**[12]** If a guaranty agency's due diligence results in the recovery of funds from a defaulting borrower, the Secretary of Education is entitled to approximately 77 percent of the recovered funds. 20 U.S.C. § 1078(c)(6). The guaranty agency is required to place recovered loan proceeds in its reserve fund and to hold those proceeds on behalf of the Secretary. *Student Loan Fund of Idaho, Inc.*, 272 F.3d at 1158 ("[M]oney collected on defaulted loans . . . [is] to be included in the 'reserve fund[.]' "); 34 C.F.R. § 682.410(a)(1)(vii) ("The guaranty agency shall credit to the reserve fund . . .

Funds collected by the guaranty agency on FFEL Program loans on which a claim has been paid[.]"); *id.* § 682.419(b)(3).

**[13]** The HEA provides that assets in the reserve accounts of guaranty agencies are "property of the United States" and can only be used by guaranty agencies to pay program expenses and liabilities. 20 U.S.C. § 1072(g)(1); *see also* 34 C.F.R. § 682.410(a)(7) ("If the guaranty agency has any claim against any other party to recover funds or other assets for the reserve fund, the claim is the property of the United States."). We have previously held that the entirety of a guaranty agency's reserve fund, including not only funds originated from the federal government but also funds from private sources, is the property of the United States. *Student Loan Fund of Idaho, Inc.*, 272 F.3d at 1166-69. Because the reserve funds are the property of the United States, the HEA grants the Secretary broad power to regulate the use of the funds. 20 U.S.C. § 1082. Under the FFELP regulations, the Secretary can order a guaranty agency to transfer money in the fund in various ways, including to the government or to another guaranty agency, in order to support the administration of the FFELP. 34 C.F.R. § 682.410.

**[14]** FFELP regulations describe the relationship between a guaranty agency and the DOE as a fiduciary relationship. *See id.* § 682.410(a)(11)(iii) (referring to the guaranty agency as "the fiduciary under its agreements with the Secretary"); *id.* § 682.410(a)(5) ("The guaranty agency shall exercise the level of care required of a fiduciary charged with the duty of investing the money of others when it invests the assets of the reserve fund[.]"); *id.* § 682.419(a) (explaining that the funds in the federal fund are property of the United States and that the "guaranty agency must exercise the level of care required of a fiduciary charged with the duty of protecting, investing, and administering the money of others").

**[15]** The Secretary of Education has repeatedly stated that guaranty agencies owe a fiduciary duty to the DOE. *See* Fed.

Family Educ. Loan Program, 61 Fed. Reg. 49,382, 49,382 (Sep. 19, 1996) ("In light of its role in the program and its responsibility for holding and protecting Federal funds, the guaranty agency's role is best characterized as that of a trustee holding money for the benefit of another. . . . Under these circumstances, a guaranty agency is responsible for acting as a fiduciary responsive for protecting the interests of the Department and taxpayers in the reserve funds."); *id.* (stating that guaranty agencies are "trustees for the Federal Government and are expected to comply with fiduciary standards"); Fed. Family Educ. Loan Program, 61 Fed. Reg. 60,426, 60,427 (Nov. 27, 1996) ("In the case of guaranty agencies, the Secretary (who provides the funds used to maintain the reserve funds and reserve fund assets) is the beneficiary and is entitled to issue appropriate rules to protect the Federal Government's interests in those funds and assets by prohibiting inappropriate uses and protecting against conflicts of interest.").

**[16]** Other courts have held that the relationship between a guaranty agency and the DOE is that of a fiduciary to a beneficiary. *See, e.g.*, *Ohio Student Loan Comm'n v. Cavazos*, 900 F.2d 894, 899 (6th Cir. 1990) ("The [guaranty agency] is a public entity that is not interested in making any sort of profit in its administration of the [loan program]. Instead, it has chosen to join with the federal government to administer the [loan program][.]"); *Great Lakes Higher Educ. Corp. v. Cavazos*, 911 F.2d 10, 14-15 (7th Cir. 1990); *Educ. Assistance Corp. v. Cavazos*, 902 F.2d 617, 627 (8th Cir. 1990). Every court that has addressed whether a guaranty agency owes a fiduciary obligation to the DOE has held that it does. *See, e.g.*, *Pelfrey*, 71 F. Supp. 2d at 1179-80; *Montgomery v. Educ. Credit Mgmt. Corp.*, 238 B.R. 806, 809-10 (D. Minn. 1999); *Davis v. United Student Aid Funds, Inc.*, 45 F. Supp. 2d 1104, 1109 (D. Kan. 1998); *Kirk v. Ed Fund*, No. 06-4205, 2007 WL 2226046, *4 (W.D. Mo. Aug. 1, 2007).

**[17]** We now join these courts in holding that guaranty agencies act as fiduciaries of the DOE when they operate under the FFELP.

### 2.  Collection Activities "Incidental to" Fiduciary Obligation

**[18]** The second requirement is that an entity's collection activities be "incidental to" its fiduciary obligation. 15 U.S.C. § 1692a(6)(F)(i). The "incidental to" requirement means that the collection activity must not be "central to" the fiduciary relationship. *See Wilson v. Draper & Goldberg*, 443 F.3d 373, 377 (4th Cir. 2006). The function of this requirement is to exclude fiduciaries whose sole or primary function is to collect a debt on behalf of the entity to whom the fiduciary obligation is owed. Thus, the requirement excludes lawyers or trustees acting solely or primarily to collect debts owed to their clients or beneficiaries. For example, in *Wilson*, the Fourth Circuit held that a law firm that was hired solely for the purpose of foreclosure was not acting pursuant to a responsibility that was "incidental to" its fiduciary obligation to its client. *Id.* Rather, the foreclosure was "central to" its obligation. Therefore, the "incidental to a bona fide fiduciary obligation" exception to the definition of "debt collector" did not apply. *Id.*

**[19]** Generally speaking, the collection of defaulted debts by a guaranty agency is "incidental to" its primary function. A central part of a guaranty agency's administrative function is — as the name suggests — guaranteeing student loans made by other entities. *See Skerry v. Mass. Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 55 (D. Mass. 1999) (describing guaranteeing loans as the primary function of a guaranty agency). "The primary business purpose of [a guaranty agency] is administration of the Guaranteed Student Loan Program. While [a guaranty agency] regularly sends these [collection] notices, such activity is incidental to its pri-

mary function of administering the federal GSL Program." *Games*, 737 F. Supp. at 1389.

[20] If this were a case in which ECMC had guaranteed the loan to Rowe, and had then undertaken to collect on the loan after default, its collection activities would have been "incidental to" its fiduciary duties to the DOE within the meaning of the FDCPA. However, this does not appear to be such a case. Rowe's complaint alleges that OSSC rather than ECMC was the guarantor of his loan. According to the complaint, ECMC's sole function was to take assignment of the loan from OSSC and to act as a collection agent. Such collection activity is not "incidental to" ECMC's fiduciary duty to the DOE.

[21] In a 1990 "Notice of Interpretation," the Secretary of Education was careful to distinguish between the activities of guaranty agencies and third parties collecting on defaulted loans on behalf of guaranty agencies. The Notice stated: "A great deal of the collection activities on GSL [guaranteed student loan] programs is performed for guarantee agencies *by third party collection contractors. . . .* [T]he secretary took particular note of the existence of Federal law that regulated the conduct of these third party collectors of defaulted student loans. *These debt collectors* were subject to the Fair Debt Collection Practices Act (FDCPA) . . . prior to the promulgation of these GSL regulations, and . . . they *remain subject to the FDCPA.*" Stafford Loan, 55 Fed. Reg. 40,121, 40,121 (Oct. 1, 1990) (emphasis added).[2] Though the Notice dealt specifi-

---

[2]We note that in *Brannan* we appear to have misread this Notice by the Secretary. In support of our broad statement that guaranty agencies are covered by the FDCPA, we wrote, "The Secretary of Education has also explicitly stated that [guaranteed student loan] third party collectors and their collection activity 'remain subject to the FDCPA.' " *Brannan*, 94 F.3d at 1262, *citing* Stafford Loan, 55 Fed. Reg. at 40,121. As the government points out in its brief to us, the Secretary's statement that collection activity "remain[s] subject to the FDCPA" is limited to activity of third party collectors working for guaranty agencies.

cally with third parties collecting debts on behalf of guaranty agencies, we cannot distinguish such activity from that of a guaranty agency collecting a debt as a third party on behalf of a loan guarantor such as OSSC.

It is, of course, possible that ECMC may turn out to have had a broader role in this case than merely acting as a collector of the debt guaranteed by OSSC. But for purposes of a motion to dismiss under Rule 12(b)(6), we take at face value the allegation in the complaint. Assuming for present purposes that ECMC's only role in this case was to collect the loan assigned to it by OSSC after Rowe's default, we hold that ECMC's collection activity was not "incidental to a bona fide fiduciary activity" within the meaning of the FDCPA. 15 U.S.C. § 1692a(6)(F)(i).

## IV.   State Law Claims

[22] After dismissing Rowe's federal FDCPA claims under Rule 12(b)(6), the district court dismissed his Oregon state law claims without prejudice under 28 U.S.C. § 1367(c). Because we reinstate the FDCPA claims, the premise for the district court's dismissal of the state law claims is now gone. We leave it to the district court on remand to deal with these claims as appropriate in light of future developments in the case.

## Conclusion

We hold that while a "guaranty agency" owes a fiduciary obligation to the DOE under the HEA, the collection activity alleged in this case was not "incidental to" that obligation within the meaning of the FDCPA because the defendant acted solely as a collection agent. We reverse the decision of the district court and remand.

REVERSED AND REMANDED.