[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12859
Non-Argument Calendar
_____

D.C. Docket No. 4:11-cv-00124-BAE-GRS

SHERRY COUNCIL BENNETT,

Plaintiff - Appellant,

versus

PREMIERE CREDIT OF NORTH AMERICA, LLC,
EDUCATIONAL CREDIT MANAGEMENT CORP.

Defendants - Appellees,

THE LANDINGS CLUB, INC.

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(January 28, 2013)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Sherry Council Bennett appeals from the district court's grant of summary judgment in favor of appellees Educational Credit Management Corporation (ECMC) and Premiere Credit of North America, LLC (Premiere) and denial of her motion for partial summary judgment.[1] *See Bennett v. Premiere Credit of N. Am., LLC, et al.*, D. Ga. 2012, __ F.Supp.2d __, (No. 11-124, Oct. 20, 2011) ("*Bennett I*") (order granting ECMC's motion for summary judgment); *see also Bennett v. Premiere Credit of N. Am., LLC, et al.*, D. Ga. 2012, __ F.Supp.2d __, (No. 11-124, May 8, 2012) ("*Bennett II*") (order granting Premiere's motion for summary judgment). Bennett challenges an administrative wage garnishment instituted by appellees in an attempt to collect monies allegedly owed by Bennett after she defaulted on her Stafford student loan. Finding no error on the part of the district court, we affirm.

---

[1] Although ECMC originally filed a motion to dismiss for failure to state a claim, the district court construed that motion as one for summary judgment, and gave the parties additional time to supplement the record. *See Bennett I*, D. Ga. 2012, __ F.Supp.2d __, (No. 11-124, Oct. 20, 2011). Bennett also filed a motion for a permanent injunction, which the district court denied because it had already "dismissed Bennett's claims against ECM[C] on summary judgment." *Bennett I*, D. Ga. 2012, __ F.Supp.2d __, (No. 11-124, Oct. 20, 2011). However, because Bennett does not "plainly and prominently" contest the permanent injunction ruling on appeal, it is therefore deemed abandoned. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that an issue is abandoned when it is not "plainly and prominently" raised on appeal).

## I.  STANDARD OF REVIEW

"We review a grant of summary judgment *de novo* and apply the same legal standards as the district court."  *Citizens for Smart Growth v. Sec'y of the Dep't of Transp.*, 669 F.3d 1203, 1210 (11th Cir. 2012) (citation omitted).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When reviewing a summary judgment motion, "[w]e do not make credibility determinations, but instead believe the evidence of the non-movant . . . and all justifiable inferences are to be drawn in [her] favor."  *Evans v. Stephens*, 407 F.3d 1272, 1277 (11th Cir. 2005) (citation and internal quotation marks omitted) (ellipses in original).  We also review *de novo* a district court's conclusion that federal law preempts state law.  *See Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121 (11th Cir. 2004).

## II.  DISCUSSION

On appeal, Bennett claims that ECMC and Premiere violated the Higher Education Act (HEA), 20 U.S.C. §§ 1001 *et seq.*; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692g; and Georgia state garnishment law, O.C.G.A. § 18-4-46.[2]  Bennett also contends that there is a question of fact as to

---

[2] Bennett's arguments are somewhat disjointed and scattered through the entirety of her brief.  While it is not our place to make arguments for an appellant, we have done our best to

3

whether she owes a debt at all, and therefore the district court improperly granted summary judgment in favor of ECMC and Premiere.

## A.  The Higher Education Act

Bennett asserts that ECMC and Premiere violated certain provisions of the HEA, which govern the procedures for administrative wage garnishment.  *See* 20 U.S.C. § 1095a(a)(2)–(5).[3]  Bennett contends that ECMC and Premiere violated

---

construe Bennett's contentions into broad categories in order to facilitate the efficiency of our review.

[3] The relevant provisions read as follows:

(a) Garnishment requirements. Notwithstanding any provision of State law, a guaranty agency . . . may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment under a repayment agreement with the Secretary, or, in the case of a loan guaranteed under part B [20 U.S.C. §§ 1071 *et seq*.] on which the guaranty agency received reimbursement from the Secretary under section 1078(c) of this title, with the guaranty agency holding the loan, as appropriate, provided that—

. . .

(2) the individual shall be provided written notice, sent by mail to the individual's last known address, a minimum of 30 days prior to the initiation of proceedings, from the guaranty agency or the Secretary, as appropriate, informing such individual of the nature and amount of the loan obligation to be collected, the intention of the guaranty agency or the Secretary, as appropriate, to initiate proceedings to collect the debt through deductions from pay, and an explanation of the rights of the individual under this section;

(3) the individual shall be provided an opportunity to inspect and copy records relating to the debt;

(4) the individual shall be provided an opportunity to enter into a written agreement with the guaranty agency or the Secretary, under terms agreeable to the Secretary, or the head of the guaranty agency or his designee, as appropriate, to establish a schedule for the repayment of the debt;

(5) the individual shall be provided an opportunity for a hearing in accordance with subsection (b) of this section on the determination of the

4

the HEA when they failed to: (1) provide her with prior notice of the nature and amount of the debt owed; (2) give her notice of their intent to initiate the administrative wage garnishment; and (3) provide certain documents and records upon request regarding Bennett's alleged Stafford loan default.  However, we have consistently held that "[w]hile the HEA endows debtors with certain rights during the wage garnishment process, the HEA expressly empowers only the Secretary of Education—not debtors—with the authority to enforce the HEA and rectify HEA violations."  *Cliff*, 363 F.3d at 1123 (citation omitted); *see* 20 U.S.C. § 1095a.  Therefore, "[i]t is well-settled that the HEA does not expressly provide debtors with a private right of action."  *Cliff*, 363 F.3d at 1123 (citing *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002)).  There is also no implied private right of action.  *McCulloch*, 298 F.3d at 1224–25.  Accordingly, the district court properly found that Bennett could not bring a private cause of action against ECMC and Premiere for the alleged HEA violations.  *See Bennett I*, D. Ga. 2012, __ F.Supp.2d __, (No. 11-124, Oct. 20, 2011); *Bennett II*, D. Ga. 2012, __ F.Supp.2d __, (No. 11-124, May 8, 2012).

---

> Secretary or the guaranty agency, as appropriate, concerning the existence or the amount of the debt, and, in the case of an individual whose repayment schedule is established other than by a written agreement pursuant to paragraph (4), concerning the terms of the repayment schedule[.] . . .

20 U.S.C. § 1095a(a)(2)–(5) (alterations in original).

5

**B.  Fair Debt Collection Practices Act**

Although there is no express or implied private right of action under the HEA, a violation of the HEA can, at times, give rise to a private cause of action under the FDCPA.  *See Cliff*, 363 F.3d at 1127.  Bennett contends that ECMC and Premiere violated the FDCPA, directly and via their failure to qualify as guaranty agencies under the HEA, when they communicated with and improperly "issued [a] garnishment withholding order to [her] employer."  *See* 15 U.S.C. § 1692c(b) (prohibiting a debt collector's communication with third parties under the FDCPA unless certain limited conditions apply).  However, Bennett can only succeed on this claim if ECMC and Premiere: (1) fail to qualify as "guaranty agencies" under the HEA, and therefore did not have express authority to contact her employer; and (2) are classified as "debt collectors" under the FDCPA, and acted in violation of its regulatory provisions.

**1.  "Guaranty Agencies"**

Under the Family Federal Education Loan (FFEL) Program, student loans, such as Bennett's Stafford loan, are guaranteed either by a state agency or by a "private nonprofit organization that has an agreement with the Secretary [of the Department of Education (DOE)] under which it will administer a loan guarantee program under the [HEA]."  34 C.F.R. § 682.200; *see* 20 U.S.C. § 1078(a)(1).

These nonprofit organizations, known as guaranty agencies, enter into agreements with the DOE that:

> [S]et forth such administrative and fiscal procedures as may be necessary to protect the United States from the risk of unreasonable loss thereunder, to ensure proper and efficient administration of the loan insurance program, and *to assure that due diligence will be exercised in the collection of loans insured under the program.*

20 U.S.C. § 1078(C)(2)(A) (emphasis added).  HEA regulations have expressly characterized the relationship between a guaranty agency and the DOE as a fiduciary relationship.  *See* 34 C.F.R. § 682.419(a) ("The guaranty agency must exercise the level of care required of a fiduciary charged with the duty of protecting, investing, and administering the money of others.").

Guaranty agencies are not only given express authority to engage in collection activities, but federal regulations mandate that the agencies engage in "due diligence" to collect on defaulted loans as part of their agreement with the DOE.  *See* 34 C.F.R. § 682.410(b)(6)(i) ("A guaranty agency *must* engage in reasonable and documented collection activities on a loan on which it pays a default claim filed by a lender. . . . [T]he agency *must* perform at least one activity every 180 days to collect the debt, locate the borrower (if necessary), or determine if the borrower has the means to repay the debt." (emphasis added)); *see generally* 34 C.F.R. § 682.411(governing "[l]ender due diligence in collecting guaranty agency loans").

7

In addition, as part of their mandatory collection activities, guaranty agencies are given express authority to "garnish the disposable pay of a debtor to collect the amount owed if the debtor has failed to make payments required under a repayment agreement." *Cliff*, 363 F.3d at 1118 (citing 20 U.S.C. § 1095a(a) ("Notwithstanding any provision of State law, a guaranty agency . . . may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment under a repayment agreement. . . .")).  Guaranty agencies also have express authority to contact a debtor's employer and issue a withholding order demanding that the employer garnish the debtor's wages.  *See* 20 U.S.C. § 1095a(a)(6) ("[T]he employer shall pay to the Secretary or the guaranty agency as directed in the withholding order. . . ."); *see also* 34 C.F.R. § 682.410(b)(9)(i)(H) ("Unless the guaranty agency receives information that the agency believes justifies a delay or cancellation of the withholding order, it shall send a withholding order to the employer. . . .").

Bennett contends that ECMC is not a guaranty agency, and that because there is no evidence that her Stafford loan was transferred or assigned to ECMC, it is not the current holder of her loan.  Bennett asserts that the sworn affidavit of ECMC's Senior Account Servicing Representative, Julia Lambert—which states that ECMC is the current holder of Bennett's loan and that it is a guaranty agency—is nothing more than an unsupported opinion.  Citing a decision from the

8

Ninth Circuit, Bennett further maintains that neither ECMC nor Premiere have engaged in the requisite activities to be classified as anything more than debt collectors. *See Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009). ECMC, on the other hand, cites Lambert's affidavit and contends that it qualifies as a guaranty agency under the HEA, such that its issuance of a withholding order to Bennett's employer was appropriate. Premiere concedes that it is not a guaranty agency.

As a preliminary matter, we reiterate the district court's observation that Bennett has confused the requirements for demonstrating an organization's "guaranty agency" status under the HEA with the requirements necessary to prove an entity's status as a "debt collector" under the FDCPA. *See Bennett II*, D. Ga. 2012, __ F.Supp.2d __, (No. 11-124, May 8, 2012) ("Bennett appears to intermingle the FDCPA and HEA."). The test that Bennett cites, as stated in our sister circuit's decision in *Rowe* and discussed by the district court below, resolves the question of "debt collector" status, but is inapplicable to determine "guaranty agency" status. *See* 559 F.3d at 1032 ("Two requirements must be satisfied for an entity *to come within the exception to the FDCPA* for collection activities 'incidental to a bona fide fiduciary obligation.'" (citing 15 U.S.C. § 1692a(6)(F)(i)) (emphasis added)). Therefore, we simply look for an agreement between ECMC and the DOE to determine guaranty agency status. *See* 34 C.F.R. § 682.200(b).

9

ECMC has presented sufficient evidence that it is the current holder of Bennett's Stafford loan, as well as evidence of its guaranty agency status, through Lambert's sworn affidavit and the attached letter listing ECMC as a guaranty agency to the DOE.  Although the list of guaranty agencies is not on official DOE letterhead, as Bennett vehemently points out, the list attached to Lambert's affidavit is identical to the list of guaranty agencies posted on the DOE's official website.  *See* U.S. Department of Education, *State Guaranty Agency*, Organizations by Type, http://wdcrobcolp01.ed.gov/Programs/EROD/org_list.cfm?category_cd=SGA (last visited Dec. 16, 2012).  Moreover, numerous sister circuits have explicitly held that ECMC is a guaranty agency.  *See Rowe*, 559 F.3d at 1032 (finding no dispute as to ECMC's guaranty agency status); *see also Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796, 798 (7th Cir. 2006) (finding that ECMC is "a non-profit corporation that acts as a guarantee agency and occasionally handles the defaulted FFELP loans of debtors who file a petition for relief under Chapter 13").

Aside from making a bald assertion that Lambert's affidavit is nothing more than "an opinion," Bennett has not presented any other evidence to support her claims regarding ECMC's guaranty agency status.  Based on the evidence in the record before us, and Bennett's failure to present sufficient evidence otherwise, we agree with the district court that ECMC qualifies as a guaranty agency under the

10

HEA, and is therefore engaged in a fiduciary relationship with the DOE.  *See* 34 C.F.R. § 682.419(a).  Accordingly, ECMC had the authority to engage in administrative wage garnishment and issue a withholding order to Bennett's employer.  *See* 20 U.S.C. § 1095a(a)(6).

### 2.  "Debt Collectors"

Congress enacted the FDCPA in order to eliminate "the use of abusive, deceptive, and unfair debt collection practices" and "to protect consumers against debt collection abuses."  15 U.S.C. §§ 1692(a), (e).  The Act thereby regulates the collection of "debts" by "debt collectors" by dictating, *inter alia*, the type and frequency of the contacts that a debt collector can make with a debtor.  *See* 15 U.S.C. §§ 1692a, 1692c; *see also Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F. Supp. 2d 1161, 1165 (N.D. Ala. 1999), *aff'd* 208 F.3d 945 (11th Cir. 2000) (per curiam).  A violation of any of the prohibited activities listed in the FDPCA gives rise to a private cause of action.  *See* 15 U.S.C. § 1692k.

The FDCPA broadly defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  However, the Act lists multiple exceptions to this definition; in relevant part, the FDCPA does not apply to "any person

11

collecting or attempting to collect any debt owed or due or asserted to be owed or due another *to the extent such activity . . . is incidental to a bona fide fiduciary obligation.*"  15 U.S.C. § 1692a(6)(F)(i) (emphasis added).  Although an entity that satisfies this exception is not subject to the FDCPA, "the Secretary of Education has expressed the belief that third-party debt collectors acting on behalf of guaranty agencies to collect federal student loans must comply with the FDCPA." *Cliff*, 363 F.3d at 1123–24 (citing 55 Fed. Reg. 40120 (Oct. 1, 1990)).

Bennett contends that ECMC and Premiere are both debt collectors under the FDCPA.  However, based on facts similar to the ones at bar, we have explicitly held that ECMC is an entity acting incident to a fiduciary relationship with the DOE, and is therefore exempt from the provisions of the FDCPA.  *Pelfrey*, 208 F.3d at 945 ("[T]he [FDCPA] does not apply to [ECMC], because [ECMC] is a 'person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." (alterations in original)).  Likewise in this case, ECMC's status as a guaranty agency, and therefore its fiduciary relationship to the DOE, is direct evidence that it satisfies the fiduciary relationship exemption and is not subject to the provisions of the FDCPA.[4]

---

[4] Even if we were to apply the test articulated in *Rowe*, as Bennett demands, ECMC is exempt from the FDCPA because (1) it has a fiduciary relationship with the DOE, and (2) its collection activities are incidental to that fiduciary obligation.  *See* 559 F.3d at 1032.

Premiere, on the other hand, concedes "that it is a third-party debt collector subject to the FDCPA." However, it contends that because ECMC actually issued the withholding order to Bennett's employer, and because Bennett's employer was specifically directed to remit payments to ECMC, Premiere "merely acted as an accounts receivable collection contractor assisting ECMC with collection of [Bennett's] defaulted student loan." Once again, ECMC had the authority to issue a withholding order to effectuate wage garnishment. *See* 20 U.S.C. § 1095a(a)(6). Moreover, the Secretary of Education has recognized that "[a] great deal of the collection action on [FFEL] Program loans is performed for guarant[y] agencies by third party collection contractors . . . subject to the FDCPA." *See* 55 Fed. Reg. 40120; *see also Cliff*, 363 F,3d at 1123–24. Accordingly, because ECMC is authorized to engage in administrative wage garnishment, and because Premiere is authorized to perform collection activities on ECMC's behalf as a third-party contractor, Premiere did not violate the FDCPA.

## C.  Preemption by Georgia Wage Garnishment Statute

Bennett also argues that the Georgia state wage garnishment statute supersedes the HEA. *See* O.C.G.A. § 18-4-46 ("[N]o part of the personal earnings of [a debtor] shall be subject to garnishment prior to [a] judgment."). However, we expressly decided this issue in *Cliff* when we held that, pursuant to the "notwithstanding any provision of state law" clause of the HEA, 20 U.S.C. §

13

1095a(a), the HEA "preempts [] those provisions of state law that would otherwise prohibit or hinder the ability of a guaranty agency to garnish a debtor's wages." 363 F.3d at 1125.  Here, because the Georgia statute would require ECMC to obtain a state court judgment prior to garnishing Bennett's wages, the Georgia statute is preempted because it hinders ECMC's ability to garnish a debtor's wages.  Therefore, Bennett's argument to the contrary is foreclosed.

## D.  Question of Fact as to Debt Owed

Bennett contends that "the record . . . is completely absent evidence that ECMC or Premiere is the owner or holder of [her] note or judgment."  Bennett also maintains that she has already paid any debt owed on the Stafford loan, and cites two official letters issued by the DOE on September 24, 2000 and February 20, 2010, stating that two of her defaulted loans have been "paid in full."  Finally, Bennett claims that appellees' failure to file a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) provides further evidence that there is a question of fact as to whether she owes a debt.

Contrary to Bennett's assertions, we need not address any of these claims. As recognized by the district court, this is not the appropriate forum to raise these issues; instead, Bennett should pursue these claims in accordance with the available administrative rights, procedures and remedies provided under the HEA. *See, e.g.*, 20 U.S.C. § 1095a(a)(5) ("[T]he individual shall be provided an

14

opportunity for a hearing . . . concerning the existence or the amount of the debt."); 34 C.F.R. §§ 682.410(b)(9)(i)(E) ("The guaranty agency shall offer the borrower an opportunity for a hearing . . . concerning the existence or the amount of the debt."), 682.410(b)(i)(J) ("The guaranty agency shall provide a hearing, which, at the borrower's option, may be oral or written, if the borrower submits a written request for a hearing on the existence or amount of the debt.").  Bennett has a right to a hearing before a "hearing official appointed by the [guaranty] agency," who "may be any qualified individual, including an administrative law judge, not under the supervision or control of the head of the guaranty agency."  34 C.F.R. § 682.410(b)(9)(i)(M).

**AFFIRMED.**