CLAY, J., delivered the opinion of the court in which GILMAN, J., joined. SUTTON, J. (pp.1110-17), delivered a separate dissenting opinion.
OPINION
CLAY, Circuit Judge.
Plaintiffs Pamela Gillie and Hazel Meadows appeal the district court order entering summary judgment in favor of Defendants Eric A. Jones; the Law Office of Eric A. Jones, LLC (“Jones Law Office”); Mark J. Sheriff; Sarah Sheriff; and Wiles, Boyle, Burkholder & Bringardner Co., LPA (“Wiles Law Firm”). Plaintiffs brought this action under the Fair Debt Collection Practices Act (“FDCPA”), 15 U.S.C. § 1692 et seq., alleging that Defendants utilized a deceptive, misleading, or false representation or means in attempting to collect consumer debts Plaintiffs owed to entities owned and operated by the State of Ohio. The Attorney General intervened on behalf of Defendants, asserting that the alleged misrepresentation— consisting of sending debt-collection notices on the Attorney General’s letterhead — was not a misrepresentation at all and was, in fact, authorized by the Attorney General. The district court found that Defendants were exempt from FDCPA coverage as “officers” of the State of Ohio; and that, in any event, their use of the Attorney General’s letterhead did not violate the FDCPA.
For the reasons set forth below, we VACATE the summary judgment in favor of Defendants and REMAND this case to the district court for further proceedings consistent with this opinion.
BACKGROUND
On September 20, 1977, Congress enacted the Fair Debt Collection Practices Act, Pub.L. 95-109, 91 Stat. 874 (codified at 15 U.S.C. 1692 et seq.), as Title VIII of the Consumer Credit Protection Act. Abusive debt collection practices were at the time, *1094 and remain today,[1] a “serious national problem” that “touches the lives of many Americans.” S.Rep. No. 95-382, at 2 (1977), 1977 U.S.C.C.A.N. 1695[2] The FDCPA specifically sought to target all “third party” and “independent debt collectors,” whom the Senate cited as “the prime source of egregious collection practices.” Id. The Senate’s contention was that independent debt collectors have little incentive to act fairly, given that they “are likely to have no future contact with the consumer and often are unconcerned with the consumer’s opinion of them.” Id. at 2. Moreover, the independent collector’s commissions-based incentive to collect as many debts as possible is problematic, because it increases the likelihood of abusive collection practices. Id. The same concerns, however, are not present for “in house collectors,” who were to be excluded from the FDCPA’s broad definition of the term “debt collector.” Id. at 3 (internal quotation marks omitted). “Government officials, such as marshals and sheriffs,” were offered by the Senate as the lone example of “in house” collectors working in the public sector. Id. at 3. The statutory language ultimately adopted for this exemption’ excluded from the definition of debt collector, “any officer or employee of ... any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties.” 15 U.S.C. § 1692a(6)(C). This language remains the only exemption for state actors. The term “debt collector,” from which these state actors are exempted, was ultimately defined as “any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.” § 1692a(6). The overwhelming breadth of this provision is fitting, given Congress’s intent to extinguish all abusive debt collection practices. One of these practices consisted of independent debt collectors “misrepresenting” that they were, in fact, “government official[s].” S.Rep. No. 95-382, at 8 (1977), 1977 U.S.C.C.A.N. 1695. This concern, along with the issue of who would qualify for the state sector exemption, are among the issues we address in this opinion.
Special Counsel and the Ohio Attorney General
Title I, Chapter 131, of the Ohio Revised Code governs the collection of debts[3] owed to the State of Ohio. These debts include unpaid taxes, overdue fees on governmental services, and administrative fines, as well as consumer debts arising from transactions with various State-owned entities (e.g., overdue tuition from a State university or unpaid medical bills from a State hospital). This case is about consumer debts. Debts that remain uncollected by the State entity to whom the debt is owed are eventually “certified” to the Office of the Ohio Attorney General (“OAG”). Ohio Rev.Code § 131.02(A). The Attorney General is thereafter responsible for collecting the debt or disposing of it by other means (e.g., securing a judgment, selling or trans *1095 ferring the claim on the debt, or causing the debt to be canceled). §§ 131.02(C), (F).
The Attorney General is not personally required to collect the debts certified to the OAG. Section 109.08 of the Ohio Revised Code provides that the Attorney General may enlist “special counsel” to collect debts on the Attorney General’s behalf. The statute reads in full:
The attorney general may appoint special counsel to represent the state, in connection with all claims of whatsoever nature which are certified to the attorney general for collection under any law or which the attorney general is authorized to collect.
Such special counsel shall be paid for their services from funds collected by them in an amount approved by the attorney general.
The attorney general shall provide to the special counsel appointed to represent the state in connection with claims arising out of [specific tax debts] the official letterhead stationery of the attorney general. The special counsel shall use the letterhead stationery, but only in connection with the collection of such claims arising out of those taxes.
Ohio Rev.Code § 109.08.
Special counsel receive their appointment by submitting a successful response to a Request for Qualifications. Once selected, they enter into a “retention agreement” with the Attorney General that defines the scope of their engagement.
The retention agreement contains a few provisions that are germane to this dispute. First, actions taken by special counsel are only authorized by and through the retention agreement and only for its duration. (R. 48-8, 2013 Retention Agreement, PagelD # 634 (“No services rendered by Special Counsel after the date of Termination shall be authorized or payable without an additional agreement from the Attorney General.”)). Second, “Special Counsel shall be engaged by the Attorney General solely on an independent contractor basis.” (Id. at PagelD # 635 (“No Special Counsel ... shall be regarded as in the employment, or as an employee of, the Attorney General or the State Clients.”)). Third, “the appointment of Special Counsel is personal in nature and does not extend to any law firm that the Special Counsel is associated with.” (Id. at PagelD # 634). Fourth, claims are assigned to special counsel; however, all collections must be forwarded and endorsed to the Attorney General before the special counsel is entitled to receive a percentage of the collections-based fee. Fifth, the retention agreement requires special counsel to “comply with the same standards of behavior as set forth in ... the Fair Debt Collection Practices Act.” (Id. at PagelD # 646). In addition to these provisions, though not in the agreement, special counsel have been orally directed by the Attorney General to utilize OAG letterhead in connection with all collections (including consumer debts, even though it is contrary to Ohio’s code[4]).
On April 13, 2012, the OAG announced a “Request for Qualifications for Special Counsel of Fiscal Year 2013” (“RFQ”). (R. 48-11, Jones Response to RFQ, Pa-gelD # 658). The RFQ solicited responses from qualified attorneys who wished to enter into a contract to perform debt collection on behalf of the state. The relationship would be “defined by contract” and the “appointment” would “only become effective upon execution of [the] Re *1096 tention Agreement.” (Id. at PagelD # 661, 663).
Defendant Mark J. Sheriff submitted a response to the RFQ on May 1, 2012. Sheriff, a partner at Wiles Law Firm, had previously been appointed as a special counsel. Sarah Sheriff also worked for Defendant Wiles Law Firm at the time under the direction of Mark Sheriff. Defendant Eric A. Jones submitted a response to the RFQ on May 2, 2012. Jones, who owned and operated Defendant Jones Law Office, had likewise served as a special counsel in previous years. Sheriff and Jones became special counsel to the Attorney General for fiscal year 2013 upon the execution of the retention agreements they received, following their selection based on their respective responses to the RFQ.
On May 24, 2012, Plaintiff Pamela Gillie was engaged in bankruptcy proceedings when she received a debt collection letter from Jones. The collection letter was written on OAG letterhead, which included both an image of the Great Seal of the State of Ohio and the Attorney General’s name — Mike DeWine — in large font at the top of the page. The letter stated: “Dear Sir/Madam, You have chosen to ignore repeated attempts to resolving the referenced ... medical claim. If you cannot make immediate full payment call DENISE HALL at Eric A. Jones, L.L.C.... at my office to make arrangements to pay this debt.” (R. 48-2, Jones Collection Ltr., PagelD # 611). The next paragraph of the letter continued in bold capital font, “THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.” (Id.) The signature block read “Eric A. Jones Outside Counsel for the Attorney General’s Office,” and the return payment stub provided that payments should be made to the Law Office of Erie A. Jones, L.L.C. (Id. at Pa-gelD # 611-12). The notice did not specifically identify the original creditor or the date on which the debt was incurred. Gillie thought that it might have been related to her pregnancy. She believed that the letter was from the Attorney General but the inclusion of the other names confused her.
On July 20, 2012, Plaintiff Hazel Meadows received a debt collection letter from Sarah Sheriff with Wiles Law Firm. The letter used OAG letterhead for the “Collections Enforcement Section” and likewise included an image of Ohio’s Great Seal. (R. 48-4, Wiles Collection Ltr., PagelD # 614). The body of the letter read, “Sir/Madam: Per your request, this is a letter with the current balance owed for your University of Akron loan that has been placed with the Ohio Attorney General. Feel free to contact me ... should you have any further questions.” (Id.) It was signed by Sarah Sheriff and the signature block noted her association with Wiles Law Firm and indicated that she was “Special Counsel to the Attorney General.” (Id.) It was also noted in the letter that the sender was a debt collector. Meadows was confused by the letter and did not recall “ever asking anyone for any information” about her debts. (R. 48-3, Meadows Affidavit, PagelD # 612). Sarah Sheriff averred, however, that the letter was drafted in response to a phone call and that Meadows could not have been confused because she .had previously made payment on the same debt after entering into an agreed judgment and payment plan on March 6, 2008.
Plaintiffs filed this suit on March 5, 2013, alleging that Defendants violated various provisions of the FDCPA by utilizing the OAG letterhead. The Attorney General thereafter successfully moved to intervene as Defendant and Counterclaim-ant. On September 6, 2013, the district court stayed discovery and ordered briefing to determine whether the issues of *1097 liability and damages should be bifurcated. Bifurcation was ordered on December 4, 2013, to delay a costly class-certification process until the court could decide the two legal issues presented: whether “special counsel” are debt collectors under the FDCPA and whether the use of letterhead from the Office of the Attorney General by special counsel violates the FDCPA. The district court also continued the stay of discovery and ordered the filing of dispositive motions within sixty days.
Plaintiffs and Defendants filed opposing motions for summary judgment and made appropriate responses. The Attorney General also moved for a judgment on the pleadings, and Plaintiffs moved to dismiss the Attorney General’s counter-complaint for failure to state a claim. The district court granted Defendants’ motions for summary judgment, denied the Attorney General’s motion for judgment on the pleadings, denied Plaintiffs’ motion for summary judgment, and denied as moot Plaintiffs’ motion to dismiss for failure to state a claim. The court first held that special counsel are not “debt collectors” within the meaning of the FDCPA because they are officers of the State of Ohio, and state officers are explicitly exempt from FDCPA coverage. The court then went on to determine that, even if special counsel did fall within the definition of a “debt collector,” use of OAG letterhead was not a “false, deceptive or misleading” communication in violation of 15 U.S.C. § 1692e. This appeal followed.
DISCUSSION
Standard of Review
We review de novo an appeal from an order granting summary judgment. Combs v. Int’l Ins. Co., 354 F.3d 568, 576 (6th Cir.2004). Summary judgment should be granted when there exists no genuine dispute of material fact and, in light of the facts presented, the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. The court may look to “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits” when ruling on the motion. Id. The facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences shall be afforded to those facts. Combs, 354 F.3d at 576-77. But, a mere “scintilla of evidence” that militates against the clear weight of the evidence in the record does not create a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Analysis
I. “Debt Collectors” and the “Officer or Employee” Exemption
The FDCPA was enacted to prevent “abusive debt collection practices” and ensure that those debt collectors who fairly engage in the practice of debt collecting “are not competitively disadvantaged” by their peers’ malfeasance. 15 U.S.C. § 1692. A “debt collector” is “any person ... who regularly collects or attempts to collect ... debts owed or ... due another” for profit. § 1692a(6). Any individual qualifying as an “officer or employee” of a state is excluded from this definition if attempting to collect debts “in the performance of his official duties.” § 1692a(6)(C).
The issue before us is controlled by the scope of the term “officer.” Specifically, we must determine whether private attorneys “appointed” as “special counsel” to the Ohio Attorney General, but operating as independent contractors, are officers of a state, within the meaning of the FDCPA. We think not. The use of the word “appoint” in reference to “hiring” *1098 independent contractors is not decisive. Special counsel, in truth, are indistinguishable from the myriad of independent contractors who enter into for-profit agreements with government agencies or actors to help fulfill the duties of some government office. The FDCPA is a broad remedial statute, Frey v. Gangwish, 970 F.2d 1516, 1520 (6th Cir.1992), with limited, clearly defined exceptions. We find no justification for diluting its protection by broadly interpreting the term “officer or employee” to include independent contractors.
A. The Dictionary Act
When a statutory term is left undefined by Congress, we first turn to the Dictionary Act, which offers definitions for words that are commonly used throughout Acts of Congress. Burwell v. Hobby Lobby Stores, Inc., — U.S. -, 134 S.Ct. 2751, 2768, 189 L.Ed.2d 675 (2014). “Officer” is one of those words; and we must adhere to the Dictionary Act definition, “unless the context indicates otherwise.” 1 U.S.C. § 1. Both sides insist that our judgment should be guided by extra-statutory considerations: Plaintiffs posit that we infer legislative intent as to the scope of the exclusion by looking to principles of sovereign immunity;[5] whereas the Attorney General stresses the importance of federalism and a state’s ability to determine the organization of its own government. “[T]he qualification ‘unless the context indicates otherwise’ has a real job to do, in excusing the court from forcing a square peg into a round hole.” Rowland v. Cal. Men’s Colony, Unit II Men’s Advisory Council, 506 U.S. 194, 200, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993). But we have not been stuck with a square peg. The Dictionary Act provides a specific definition for the present occasion that comports with our common understanding of the word “officer,” and leads to a result that is consistent with the purpose of the FDCPA.
We review de novo the interpretation of statutory language. RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC, 754 F.3d 380, 384 (6th Cir.2014). When the language of a statute is clear we must apply its plain meaning. Ashland Hosp. Corp. v. Serv. Emps. Int’l Union, Dist. 1199, 708 F.3d 737, 743 (6th Cir .2013).
An “officer” “includes any person authorized by law to perform the duties of the office.” 1 U.S.C. § 1. Defendants contend that “special counsel” easily fall within this definition by operation of the following Ohio statutes: § 109.08, authorizing the Attorney General to appoint special counsel to collect debts; and § 131.02, assigning the Attorney General responsibility over the collection of debts owed to the State. The difficulty with Defendants’ arguments is that these statutes do not authorize special counsel to fulfill the duties of any office. Our focus is drawn to the following words: “authorized by law” and *1099 “the duties of the office.” We consider each phrase in turn.
1. Authorized by Law
Although it is true that special counsel are authorized to collect certain debts assigned to them on behalf of the Attorney General, they are not authorized to do so by law. The Attorney General contends that § 109.08 — bearing the title “special counsel to collect debts” — provides such an authorization. But this argument is specious. Our analysis must be guided by parsing the meat and bones of the statute, not simply by surveying its skin. Section 109.08, which is broken into four sentences, primarily governs the conduct of the Attorney General, and not that of special counsel. First, the statute authorizes the Attorney General to employ or contract with individuals selected by the Attorney General to act as special counsel for the purpose of collecting debts certified to the OAG. Second, it authorizes the Attorney General to set the pay of special counsel, which must be allocated only from funds that special counsel themselves have collected. Third, § 109.08 requires the Attorney General to provide OAG letterhead to any special counsel assigned to collect specific tax debts. The fourth sentence, “The special counsel shall use the letterhead stationery, but only in connection with the collection of such claims arising out of those taxes," is the only provision of the statute that grants any authority to special counsel. Ohio Rev.Code § 109.08 (emphasis added). This provision not only fails to authorize any collections activity, it restricts the manner in which collections may occur should any' collections actually be authorized or assigned by the Attorney General.[6] Section 109.08 simply establishes the framework under which the Attorney General, within his or her discretion, may delegate the collection of debts to a third-party debt collector. Authorization to actually act as an officer of a state requires more. Such an authorization entails the actual capability to act, not merely the prospect of a future delegation. See Authorize and Authority, BLACK’S LAW DICTIONARY (10th Ed.2014) [hereinafter “BLACK’S”] (to authorize is “to give legal authority,” which means “the power delegated by a principal to an agent”).
We find no difficulty in determining the source of special counsel’s authority. The RFQ emphasized that an appointment as special counsel would “only become effective upon execution of a Retention Agreement,” and that any relationship with the OAG would exclusively be “defined by contract.” (R. 48-11, Jones Response to RFQ, PagelD # 661, 663). The retention agreements themselves reiterated that “[s]pecial counsel shall be engaged by the Attorney General solely on an independent contractor basis.” (R. 48-8, 2013 Retention Agreement, PagelD # 635). Absent a contract and work being specifically assigned thereunder, “special counsel” is an empty title. Finding no authority derived from this title, we cannot say that special counsel are “authorized by law” to perform any duties. They are instead authorized only by contract with the OAG.
The Attorney General suggests that “a fair reading of ‘authorized by law’ means simply that it was lawful for the Attorney General to direct that [s]pecial [c]ounsel perform duties of the Attorney General’s office.” This interpretation is *1100 obviously flawed. The Attorney General has numerous duties, many of which are lawfully delegated by necessity to his staff at the OAG, not all of whom are officers. A narrower reading of the Attorney General’s interpretation could be that only those delegations that are specifically contemplated by statute qualify as being authorized by law. However, as explained above, only an actual delegation (not one that is merely contemplated) falls within the ordinary meaning of the word “authorized.” We are left only with the Attorney General’s contracting authority to support the Attorney General’s position. But the phrase “authorized by law” cannot be construed so as to include all duties and responsibilities entrusted by contract to an independent contractor. To hold otherwise would invite a preposterous result— bestowing officer status under the Dictionary Act on every independent contractor working on behalf of a state.[7] This cannot be the case. “Interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.” Guzman v. U.S. Dep’t of Homeland Sec., 679 F.3d 425, 432 (6th Cir.2012) (internal quotation marks omitted).
2. “The Duties” of the Office
Turning from “authorized by law,” we find another reason to disqualify special counsel as officers under the plain meaning of the Dictionary Act. Mainly, that special counsel do not perform “the duties” of any office. The use of the definite article preceding both “duties” and “office” in the Dictionary Act’s definition restricts our interpretation of that language. “[T]he word ‘the’ frequently (but not always) indicates ‘a particular thing.’ ” NLRB v. Noel Canning, 573 U.S. -, 134 S.Ct. 2550, 2561, 189 L.Ed.2d 538 (2014). It can also be used to refer to something generically, id., as may be the case with “the office.” By way of example, officers include any person authorized by law to perform the duties of the office in question — which could be the Office of Attorney General or some other public office. However, the word “the” that precedes “duties” has only one sensible construction- — that it refers to a specific thing — all duties associated with the office in question. It would be unreasonable to construe “the,” in that instance, to mean “a,” “some” or “any.” See, e.g., Sandifer v. U.S. Steel Corp., — U.S.-, 134 S.Ct. 870, 876, 187 L.Ed.2d 729 (2014) (“It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.” (internal quotation marks omitted)); Freeman v. Quicken Loans, Inc., — U.S. -, 132 S.Ct. 2034, 2042,182 L.Ed.2d 955 (2012) (“And it is normal usage that, in the absence of contrary indication, governs our interpretation of texts.”).
Special counsel qualify as officers only if they are entitled to perform all duties of some public office.[8] But special counsel *1101 are not so entitled. Special counsel cannot perform all duties of the Attorney General’s office; nor are they associated with any other public office.[9] A “public office” is “[a] position whose occupant has legal authority to exercise government’s sovereign powers for a fixed period.” Public Office, BLACK’S (emphasis added). The authority to collect consumer debts is not a sovereign power; instead, it is a right that can be exercised by any creditor. See Sovereign Power, BLACK’S (“The power to make and enforce laws.”); Sovereign Right, BLACK’S (“A unique right possessed by a state or its agencies that enables it to carry out its official functions for the public benefit, as distinguished from certain proprietary rights that it may possess like any other private person.”). Without a legislatively designated office or the authority to exercise sovereign powers, special counsel are not officers of the State.
B. Officers, Appointment, and Independent Contractors, Generally
Even if the Dictionary Act were inapplicable to this case, our conclusion would be the same. The Attorney General has attributed special weight to the word “appoint,” which it is not due. For reasons known only to the legislature, all of the Attorney General’s employees are appointed. See Ohio Rev.Code § 109.05 (“The attorney general may appoint such employees as are necessary.” (emphasis added)). Once we remove this guise as the basis for special counsel’s authority, the resolution of this issue is readily apparent. The salient distinction between special counsel and the Attorney General’s employees, who are also appointed, is special counsel’s independent-contractor status. The overwhelming weight of authority sensibly finds that independent contractors are not exempt from FDCPA coverage as officers or employees, pursuant to 15 U.S.C. § 1692a(6)(C). See, e.g., Braman v. United Student Aid Funds, Inc., 94 F.3d 1260, 1263 (9th Cir.1996)' (“This exemption applies only to an individual government official or employee who collects debts as part of his government employment responsibilities. [The contractor] is a private .nonprofit organization with a government contract....”); Pollice v. Nat’l Tax Funding, L.P., 225 F.3d 379, 406 (3d Cir.2000) (“The exemption expressly is limited to ‘any officer or employee of the United States or any State’.... [And, it] does not extend to those who are merely in a contractual relationship with the government.”); see also Piper v. Portnoff Law Assocs., 274 F.Supp.2d 681, 688 (E.D.Pa.2003) (“Because the defendants are in a contractual relationship with the City ..., the municipal officers’ exemption does not extend to them.”); Gradisher v. Check Enforcement Unit, Inc., 133 F.Supp.2d 988, 992 (W.D.Mich.2001) (“This Court agrees with Braman and Pollice that an independent contractor is not entitled to an exemption to the FDCPA pursuant to 15 U.S.C. § 1692a(6)(C).”); Knight v. Schulman, 102 F.Supp.2d 867, 876 (S.D.Ohio 1999) (“Since the Defendant was an attorney in private practice, rather than an officer or employee of the United States, he is not excluded from the definition of debt collector, regardless of whether the Defendant was acting as an agent of the United States at the time the letters ... were written.”).
*1102 Quite simply, “[t]he legal question raised ... is whether someone who has been appointed as special counsel' to the attorney general is properly characterized as a state officer or employee or as an independent contractor.” Keefer v. Wiles, Boyle, Burkholder & Bringardner, Co., LPA, Nos. 2:07-CV-1205, 2:07-CV-1288, 2008 WL 4404295, at *3 (S.D.Ohio Sept. 23, 2008) (emphasis added). The Attorney General has legally distanced himself and the OAG from special counsel so that the State of Ohio does not suffer the negative consequences of special counsel’s actions. Now, he wishes to see that special counsel get treated as if they are officers of the State of Ohio, directly under his supervision. The Attorney General cannot have it both ways; special counsel are not officers or employees simply because they are independent contractors. No court has held otherwise.[10]
C. Federalism and Policy Concerns
The Attorney General seeks to frame this case as a matter of federalism, fundamentally insisting that Congress should have explicitly legislated that an independent contractor is incapable of being an “officer or employee” of the state. For legal authority, the Attorney General points to Gregory v. Ashcroft and the “plain statement” rule. See 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (“If Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute.” (internal quotation marks omitted)). This case is about third-party debt collectors. Ohio is not being regulated; nor is the structure of its government being challenged.
Contrary to Defendants’ assertions, special counsel also fail to qualify as officers of the State under Ohio’s own laws. Section 109.36(A)(1) of the Ohio Revised Code defines an “[o]fficer or employee” as “[a] person who ... is serving in an elected or appointed office or position with the state or is employed by the state.” Defendants conclude that special counsel must be officers because they are “appointed” pursuant to § 109.08 to a “position with the state.” Again, the use of the word “appoint” is overstated. The Supreme Court of Ohio itself has recognized that courts should not “read so much into the ... word ‘appointment’ because ... the more significant words in [the statutory defini *1103 tion of ‘officer or employee’] are ‘office or position with the state.’ ” Engel v. Univ. of Toledo Coll. of Med., 130 Ohio St.3d 263, 267 ¶ 18, 957 N.E.2d 764 (2011).[11] The court elaborated by noting that a “public officer ... must possess some sovereign functions of government to be exercised by him for the benefit of the public either of an executive, legislative, or judicial character.” Id. at ¶ 19 (internal quotation marks omitted) (emphasis added); accord Solowitch v. Bennett, 8 Ohio App.3d 115, 456 N.E.2d 562, 566 (1982) (“The chief and most decisive characteristic of a public office is determined by the quality of the duties with which the appointee is invested.... If official duties are prescribed by statute, and their performance involves the - exercise of continuing independent, political or governmental functions, then the position is a public office.” (internal quotation marks omitted)). Special counsel exercise neither “sovereign functions” nor “independent, political or governmental functions.” Nor are they prescribed by statute any “powers and duties,” as is common throughout the code.[12]
Another fair reading of Ohio’s “officer or employee” statute is- that only individuals “serving in an elected or appointed office ” qualify as an officer, whereas those “serving in an ... appointed ... position with the state” are merely employees.[13] Special counsel necessarily fall into a third category, independent contractors, because it appears that the legislature failed to distinguish between “officers” and “employees” based on the presumption that all officers are, in fact, employees of the State of Ohio. This interpretation is consistent with another provision of the code, which presumes that every officer has a State-entity employer. See § 109.361 (“All expenses ... in the defense of an officer or employee shall be paid by the employer that employed the officer or employee at the time the alleged act or omission occurred.”). However, the State is not special counsel’s (nor any independent contractor’s) employer.[14] See Employer, BLACK’S (“[0]ne who controls and directs a worker under an express or implied contract of hire and who pays the workers’ salary or wages.” (emphasis added)); Independent Contractor, BLACK’S (“Some *1104 one -who is entrusted to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it.... Unlike an employee, an independent contractor who commits a wrong while carrying out the work usu[ally] does not create liability for the one who did the hiring.” (emphasis added)).
If Special Counsel Defendants truly believed in their status as officers of the State of Ohio, then it begs the question why they are not now represented by the Attorney General. See Ohio Rev.Code § 109.361 (“Upon the receipt of a written request by an officer or employee, the attorney general ... shall represent and defend the officer or employee in any civil action instituted against the officer or employee.”). The answer is simple. Special counsel are not officers because they are independent contractors and not the holders of a public office. See Advisory Opinion No. 75-016, Ohio Ethics Commission (August 19,1975).[15]-[16]
If an actual officer or employee of the State of Ohio were collecting these debts, he or she would be exempt from FDCPA ■ coverage. To the extent that this natural interpretation of an “officer ór employee,” which excludes independent contractors, restricts a state’s ability to organize its government, Congress did make a plain statement about a state’s right to seek relief from FDCPA coverage: the Bureau of Consumer Financial Protection is required to exempt all “debt collection practices within any State” that are subject to “substantially similar” requirements as under the FDCPA. See 15 U.S.C. § 1692o. If special counsel were similarly situated to officers or employees of the State of Ohio, the Ohio Attorney General could have sought an exemption under this provision of the statute. See 12 C.F.R. § 1006.1 (“This subpart establishes procedures and criteria whereby states may apply to the Bureau for exemption of a class of debt collection practices with the applying state from the provisions of the [FDCPA].”)
Notably, Congress did create an explicit exemption for certain private entities. See 15 U.S.C. § 1692p. The presence of this provision militates against the notion that Congress also intended to exempt indepen- , dent contractors, generally, from FDCPA coverage without saying so. See Corley v. United States, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (“[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.” (internal quotation marks omitted)). Congress did not include an exemption for independent contractors similarly situated to special counsel. We will not do so now.
Special counsel are, simply, as their contract with the Attorney General states, *1105 independent contractors. Independent contractors are not officers or employees under the plain language of the Dictionary Act. Nor are they officers of the State of Ohio simply because § 109.08 uses the word “appoint.” Special counsel do not hold a public office; nor do they wield any sovereign power. The FDCPA specifically sought to regulate independent debt collectors. Like any other independent debt collector, special counsel are paid only when they actually collect a debt. Congress explicitly referenced this incentive as contributing to the problems attendant with independent debt collectors. See S.Rep. No. 95-382, at 2 (1977), 1977 U.S.C.C.A.N. 1695, 1696 (“Collection agencies generally operate on ... commission, and this has too often created the incentive to collect by any means.”). By finding that special counsel are subject to the FDCPA prohibitions, we are merely holding that Congress’ intended target for regulation — independent debt collectors — are actually subject to the regulation.
II. False, Deceptive, or Misleading Acts and § 1692e Liability
Section 1692e states, “A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.” 15 U.S.C. § 1692e. This provision, along with its subsections, provides an “extraordinarily broad” base of protection to consumers, Frey v. Gangwish, 970 F.2d 1516, 1521 (6th Cir.1992), and is intended to prevent all abusive debt collection practices by independent debt collectors that tend to deceive or mislead a consumer. See 15 U.S.C. § 1692 (“It is the purpose of [the FDCPA] to eliminate abusive debt collection practices.... ” (emphasis added)). An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives. See 15 U.S.C. § 1692 (“Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs----”). When the sender of a letter misrepresents his or her authority, the least sophisticated consumer might reasonably be intimidated, confused, and “feel pressured to immediately pay the debt, even if she disputed its validity.” Barany-Snyder v. Weiner, 539 F.3d 327, 334 (6th Cir.2008) (internal quotation marks omitted).
Intimidation is at the heart of this case. There is no compelling reason for special counsel to use the OAG letterhead, other than to misrepresent their authority and place pressure on those individuals receiving the letters. The Attorney General insists that any sense of urgency (i.e. intimidation) that is created by the letters is permissible because the State has special authority that a regular creditor does not. This putative authority is not cited in any brief. The Attorney General mentioned at oral argument the power to garnish wages and to withhold lottery winnings. However, these powers are precisely those powers that are granted to all creditors after they have received a judgment against the debtor.[17] See Ohio Rev.Code § 2716 et seq. (allowing for garnishment of wages to judgment creditors); Ohio Admin. Code § 3770:1-801(B)(7) (allowing- for garnishment of lottery prizes for judgment creditors). Presumably, it is the *1106 lack of extraordinary powers with respect to the collection of consumer debts that causes the Attorney General to seek out special counsel with “expertise” in “the securing of judgments” and “post-judgment collections.” (R. 48-11, Jones RFQ Response, PagelD • # 660); see also Ohio Rev.Code § 131.02(C) (listing the Attorney General’s debt collection options: “The attorney general shall collect the claim or secure a judgment.... ” (emphasis added)). The use of the letterhead has no apparent purpose beyond misleading a consumer into believing it is the Attorney General who is collecting on the account. ■ But bad intentions do not result in liability under § 1692e; the debt collection practice must actually be deceptive.
The question before us, then, is whether an unsophisticated consumer could reasonably be misled into thinking she was being contacted by the Ohio Attorney General due to an independent contractor’s use of OAG letterhead. If she could, we must also determine whether there is a genuine dispute of material fact as to any confusion that could be created by this debt collection practice under the particular circumstances of this case. Before we answer these questions, an overview of the liability provisions is necessary.
A. Liability Provisions
A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer. Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 329 (6th Cir.2006). This is an objective standard, with a relatively low bar so as to cast FDCPA-protection over all consumers, even those who are “gullible” or “naive.” Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 438 (6th Cir. 2008). However, because it is an objective standard, we will not sanction “liability for bizarre or idiosyncratic interpretations of collection notices.” Barany-Snyder, 539 F.3d at 333 (internal quotation marks omitted). Courts must consider the question of liability in light of the FDCPA’s prevailing purpose — to prevent abusive, misleading, and deceptive debt collection practices.
, In addition to the general liability provision, the FDCPA enumerates sixteen specific instances of conduct deemed to be per se violations of § 1692e. Plaintiffs rely on two of these provisions, §§ 1692e(9) and (14). “Without limiting the general application of the foregoing, the following conduct is a violation of [§ 1692e]”:
(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.
(14) The use of any business, company, or organization name other than the true name of the debt collector’s business, company, or organization.
15 U.S.C. §§ 1692e(9), (14). Only material violations of the § 1692e prohibitions will result in liability.[18] Wallace v. Washing *1107 ton Mut Bank, F.A., 683 F.3d 323, 326-27 (6th Cir.2012). But materiality in the FDCPA context is no more than a restatement of the above-referenced standard: a false representation or act is material if it has the tendency to confuse the least sophisticated consumer. Id.
B. OAG Letterhead and the Least Sophisticated Consumer
We must decide, given the particular facts of this case and the words written in these letters, whether the least sophisticated consumer would be misled by the use of OAG letterhead, or, if there is any genuine dispute of fact as to whether these letters were misleading. See Wallace, 683 F.3d at 326-27. Section 1692e(9) prohibits debt collectors from “simulating]” official documents; from “falsely representing]” that a communication is being “issued” by a government agent; and from distributing communications that “create[] a false impression as to its source.” Subsection (14) prohibits the use of “any ... name other than the true name of the debt collector’s business.” It is clear that these provisions were violated in the technical sense — Mike DeWine is not the true name of any Defendant, Sarah Sheriff is not a special counsel, and the official letterhead certainly implied that the letter was issued by the OAG. But whether these misrepresentations are material requires further analysis.
Historically, special counsel’s use of OAG letterhead has led to confusion. The Attorney General admitted to receiving phone calls from consumers asking whether the letters were authentic, and if the consumer did in fact owe a debt to the Attorney General. This revelation is unsurprising; many consumers might reasonably be unaware of Ohio’s debt certification process and fail to understand why Ohio’s chief law enforcement officer is attempting to collect from them. Receiving a bill from a state university, which the consumer actually attended, would naturally be perceived by an average consumer, to say nothing of a naive or gullible one, as substantially different from receiving a collection letter written on OAG letterhead. The presence of the authoritative symbols at the top of the letter immediately signals to the debtor that it is the State of Ohio that is threatening to take action against her. If the consumer has been deceived, he or she may be overborn, and the precise type of abuse that the FDCPA sought to eradicate has been achieved.
The letterhead is not, however, the sole representation made by these letters. We must presume that Plaintiffs will read the entirety of the collection notice, with “a basic level of understanding ... and care.” Kistner, 518 F.3d at 438-39. Both letters included clear indications that they were sent by an attorney who was acting as a debt collector. There was also some indication that the attorney’s role as a debt collector was separate and apart from the OAG. Defendant Jones signed the letter directed to Gillie as “Outside Counsel for the Attorney General’s Office.” He also used his business address and informed Gillie to contact one of his employees at his law firm. Likewise, Defendant Sarah Sheriff signed the Meadows letter as both an employee of Wiles Law Firm and as special counsel. These representations may clarify the confusing impact of the letterhead for the least sophisticated consumer, or they may be overshadowed by the larger presence of the Great Seal of Ohio and the Attorney General’s name. *1108 The inclusion of the title “special counsel” in the signature block says nothing about a debt collector’s relationship to the Attorney General; and the representation that a debt collector is acting as outside counsel working for a law firm does not preclude liability. See Peter v. GC Servs. L.P., 310 F.3d 344, 352 (5th Cir.2002) (finding a violation of § 1692e(14) where a debt collector used its true name in the letter ■while simultaneously directing the consumer to the government’s return address). The independent debt collector may have achieved his desired impact at the point when the letter is opened and the least sophisticated consumer perceives the name of the Attorney General because the least sophisticated consumer may believe that “the price of poker has just gone up.” Avila v. Rubin, 84 F.3d 222, 229 (7th Cir.1996).
Both parties, and the court below, believe that summary judgment is appropriate one way or the other, but materiality is a mixed question of law and fact. See United States v. Gaudin, 515 U.S. 506, 521, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (“It is commonplace for the same mixed question of law and fact to be assigned to the court for one purpose, and to the jury for another.”). And, often “whether a letter is misleading raises a question of fact.” Buchanan v. Northland Grp., Inc., 776 F.3d 393, 397 (6th Cir.2015). A letter that contains contradictory information or that tends to send a mixed signal is inherently confusing when it fails to include language that clarifies its meaning. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 309 (2d Cir.2003). Use of the letterhead, in our view, is intended to induce a higher rate of repayment by intimating that the State of Ohio is in fact sending the letter, which may lead the naive consumer to prioritize this debt above all others for no good reason. But intentions are not always realized and do not necessarily predict the impact of these letters on the least sophisticated consumer. It is not our role as judges to assert with certainty and without verifiable reason which individuals would or would not be misled by these letters. Therefore, we will not do so in this instance. Whether these letters did enough to clarify the initial confusion created by the use of the government letterhead is a question for the jury. See, e.g., Kistner, 518 F.3d at 441; Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 613 (6th Cir.2009).
The Wiles Defendants suggest that Meadows could not reasonably have been confused because she had previously entered into an agreement to pay the debt in question and the letter was sent at her request. But this contention rings hollow,[19] and regardless, would not shield Defendants from liability because Meadows did not have to allege harm or actual confusion — the FDCPA is a “strict liability statute.” Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir.2007).
Defendants also seek shelter from potential liability by way of qualified immunity, which generally shields “government officials performing discretionary functions ... from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.”[20] *1109 Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). But qualified immunity is inapplicable to an action brought directly under the FDCPA, where Congress has included an explicit exemption from debt collector liability for government officials. Cf. Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980) (“Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied. .. ,”).[21]
The Attorney General insists that no deception has occurred in this case because special counsel and the OAG are but one and the same. But they are not.[22] The contractual relationship between special counsel and the Attorney General is no different than the relationship between any private, for profit debt collector and the creditors he or she serves. And neither a contractual relationship, nor any power of agency, nor an accurate description by special counsel of their relation to the OAG, precludes liability under the FDCPA. See Knight v. Schulman, 102 F.Supp.2d 867, 876 (S.D.Ohio 1999) (“[Regardless of whether the Defendant was acting as an agent of the United States at the time the letters ... were written,” the FDCPA applied “[s]ince [he] was an attorney in private practice, rather than an officer or employee of the United States.”); see also McMillan v. Collection Profs., Inc., 455 F.3d 754, 761 (7th Cir.2006) (“[I]n some cases the literal truth may convey a misleading impression.”) (internal quotation marks omitted); Gradisher v. Check Enforcement Unit, Inc., 210 F.Supp.2d 907, 914 (W.D.Mich.2002) (“The fact that [the defendant] had an ‘affiliation’ with the [government] is thus irrelevant because [the defendant’s] notices created the false impression that the notices were generated by the [government].”).
Special counsel had an affirmative duty as debt collectors to abide by the provisions of the FDCPA. The FDCPA prohibits, as a per se deception, the false implication that a collection notice is being sent by a government actor. This deception may inappropriately influence a consumer’s decisions by inducing prompt payment, regardless of the debtor’s circumstances or the accuracy of the alleged indebtedness. That an OAG employee could attain the same leverage against the alleged debtor is not at issue in this case — employees and officers of a state are exempt from the FDCPA. Whether or not the use of the letterhead by special counsel was compelled by the OAG, a jury could reasonably find that special coun *1110 sel’s use of the letterhead is confusing; and therefore a violation of § 1692e, as a materially false, deceptive and misleading practice. We recognize the importance of a state’s ability to collect on its own accounts, but once it has assigned debts to an independent, third-party debt collector, the federal rules apply. That is what happened in this case. And special counsel are liable if a jury finds that they have held themselves out as something they are not.
CONCLUSION
Because a jury could reasonably find that the use of the Ohio Attorney General’s letterhead by the “special counsel” acting as independent debt collectors, in the manner and under the circumstances present here, to result in deceptive, misleading and false representations in violation of the Fair Debt Collection Practices Act, we hereby VACATE the summary judgment in favor of Defendants and REMAND this case to the district court with instructions for the district court to submit to the jury the question as to whether these letters were actually confusing to the least sophisticated consumer.

.See Press Release, FTC, New York Attorney General Crack Down on Abusive Debt Collectors (Feb. 26, 2015), available at https://www. ftc.gov/news-events/press-releases/2015/02/ftcnew-york-attorney-general-crackdown-abusive-debt-collectors; Rebecca Thiess & Ellen Taverna, Cleaning Up Debt Collection: New rules are necessary to end abusive debt collection practices, U.S. News (Mar. 24, 2014, 10:45 a.m. EDT), http://www.usnews. com/opinion/economic-mtelligence/2014/03/ 24/the-consumer-protection-bureau-should-end-abusive-debt-collection.

. This is the final committee report that was presented with the legislation before its enactment.

. These debts are generally referred to as "claims” throughout the Ohio Revised Code.

. "The special counsel shall use the letterhead stationery, but only in connection with the collection of such claims arising out of those toes.” Ohio Rev.Code § 109.08 (emphasis added).

. Debt collection companies that win government contracts pursuant to a statutory authorization are not entitled to sovereign immunity. Rosario v. Am. Corrective Counseling Servs., 506 F.3d 1039 (11th Cir.2007); Del Campo v. Kennedy, 517 F.3d 1070 (9th Cir. 2008). Special counsel, likewise, are not entitled to sovereign immunity because of their independent-contractor status and indemnification of the OAG. See Brotherton v. Cleveland, 173 F.3d 552, 560 (6th Cir.1999) (listing four factors for the court to .consider; indemnification being the most salient); cf. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 51 n. 21, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) ("It would indeed heighten a mystery of legal evolution were we to spread an Eleventh Amendment cover over an agency that consumes no state revenues but contributes to the State’s wealth.” (internal quotation marks omitted)).

. The Attorney General's insistence that special counsel violate this restriction is the basis for this action. Taxes owed to a state are not debts under the FDCPA. The legislature's failure to specifically endorse the use of OAG letterhead by special counsel in the collection of consumer debts supports an inference that the state understood special counsel to be independent debt collectors and not entitled to use government letterhead.

. In Ohio, for example, the Facilities Construction Commission and its Executive Director are tasked with "general supervision over the construction of any projects, improvements, or public buildings constructed for a state agency.” Ohio Rev.Code § 123.21(2). The Executive Director, like the Attorney General, is authorized by statute to engage independent contractors to undertake functions specifically prescribed by statute to his or her office. § 123.21(3). Under the Attorney General’s interpretation of the Dictionary Act, every independent contractor working on a construction project for a state agency in the State of Ohio would be an officer of the state.

. This interpretation is also consistent with the common understanding of the term "officer.” See Officer, BLACK'S (“In public af *1101 fairs, the term refers esp. to a person holding public office under a national, state, or local government and authorized by that government to exercise some specific function.”).

. The Attorney General has conceded that there is no legislatively designated office of special counsel.

. Defendants point to a few cases for support, but they are inapposite. In Bell v. Newnham, No. L-89-373, 1990 WL 131972, at *2 (Ohio Ct.App. Sept. 14, 1990), the Ohio Court of Appeals held that special counsel was "acting ... under color of [state] law” for the purposes of a § 1983 suit. The court relied on the fact that the plaintiff had sued special counsel "in his capacity as a state officer or employee,” but the court never analyzed the validity of this assumption. Whether or not special counsel were "officers or employees” is insignificant in the § 1983 context, where it is widely accepted that independent contractors may act under color of law. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("To act under color of law does not require that the accused be an officer of the State.” (internal quotation marks omitted)). Similarly in Berridge v. Heiser, 993 F.Supp. 1136, 1143 (S.D.Ohio 1997), the court found that special counsel could be sued under § 1983 if "acting under color of state law.” Finally, in Heredia v. Green, 667 F.2d 392 (3d Cir.1981), the Third Circuit found that the defendant was a state officer exempt from FDCPA coverage because he had been appointed a Landlord and Tenant Officer of the court. Like special counsel, the defendant was charged with serving debt notices. Unlike special counsel, the Landlord and Tenant Officer position was prescribed duties by statute and the holder of the position was not in an independent contractual relationship for the purpose of collecting debts. See id. at n. 3.

. Defendants attempt to distinguish this case because' the use of the word "appointment” appeared in a letter as opposed to a statute (like § 109.08); however, they fail to recognize that the court specifically identified which words were most important in defining an officer of the state, pursuant to § 109.36(A)(1) — "office or position with the state.”

. See, e.g., Ohio Rev.Code § 109 (Attorney General’s powers and duties);' § 109.04 ("Powers and duties of first assistant attorney general”); § 109.75 ("Powers and duties of peace officer training commission executive director”); § 111.04 ("Duties of assistant secretary [of State]”); § 121.081 ("Department of insurance — powers and duties”); § 121.083 (“Superintendent of industrial compliance — powers and duties”); § 121.33 ("Office of Hispanic-Latino affairs — powers and duties”); § 121.42 ("Inspector general— powers and duties”); § 1155.011 (“Superintendent and deputy superintendent for savings and loan associations and savings banks — powers and duties”); § 118.08 ("Powers, duties, and functions of financial planning and supervision commission”); § 120.04 ("State public defender — powers and duties”); § 120.15 ("County public defender — powers and duties”).

. Special counsel has explicitly disclaimed the employee designation through contract.

. The state could have said "paid by the agency, office, or department that employed,” or used any other language that did not suggest a specific relationship between the offi- . cers and the entity that hired them. We must presume that the Ohio legislature used the words it chose with a full understanding of their common meaning. Beverage Distribs., Inc. v. Miller Brewing Co., 690 F.3d 788, 794 (6th Cir.2012).

. The Ohio Ethics Commission — an independent body responsible for ethics advice and enforcement with respect to the executive branch — was specifically asked to address whether special counsel were officers of the State of Ohio pursuant to § 109.36 to advise attorneys serving as special counsel if they were subject to a state prohibition against officers receiving outside income. The Committee noted that "[s]pecial counsel of the attorney general ... are not appointed to an office or an instrumentality of the state ... but are rather engaged as an agent of an elected officer of the state.” Advisory Op. No. 75-016. Nor were they employed by the state because they "are independent contractors.” Id.

. Defendants also point to § 124.11(A) (Unclassified service — classified service), which lists special counsel alongside of assistant attorneys general as unclassified civil servants. This categorization is meaningless, as it also includes teachers, library staff, nurses, and volunteer firefighters, among many others who are certainly not officers.

. The Attorney General does have special powers'with respect to tax debts, which are not at issue in this case. See, e.g., Ohio Rev. Code § 3770.073 (“Satisfying debts to state from lottery prize awards”); § 3770.072 (“State income tax withholding and filing of report”).

. Plaintiffs suggest that materiality must be presumed under subsections (9) and (14) because those subsections describe misleading or deceptive means as opposed to false representations. This distinction is overstated. "Materiality is an ordinary element of any federal claim based on a false or misleading statement.” Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir.2009) (internal quotation marks omitted) (emphasis added). Here, we are concerned whether the means — using OAG letterhead — is making the materially false statement that the letters were, in fact, sent by the Attorney General. *1107 Moreover, a materiality requirement is consistent with the legislative intent. See S. Rep. 95-382 ("[The FDCPA's] purpose is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.” (emphasis added)).

. The letter was generically addressed to "Sir/Madam.”

. Private individuals working on the behalf of the government may also seek the protection of qualified immunity, if offering such protection serves the public interest. Filarsky v. Delia,-U.S.-, 132 S.Ct. 1657, 1665, 182 L.Ed.2d 662 (2012). But three of five Defendants — Wiles Law Firm, Jones Law Office, and Sarah Sheriff — had no relationship with the government. See (R. 48-8, 2013 Retention Agreement, PagelD # 634) ("[T]he *1109 appointment of Special Counsel is personal in nature and does not extend to any law firm that Special Counsel is associated with.”).

. Qualified immunity typically applies to actions brought under § 1983 or pursuant to Bivens. We have only extended its coverage to actions brought directly under a federal statute on a few occasions, see, e.g., Cullinan v. Abramson, 128 F.3d 301, 312 (6th Cir. 1997) (RICO); Blake v. Wright, 179 F.3d 1003, 1011-12 (6th Cir.1999) (Federal Wiretap Act), and those statutes did not include explicit exemptions for public officials.

. See, e.g., (R. 48-8, Retention Agreement, PagelD # 634-35) (“No Special Counsel ... shall be regarded as in the employment of, or as an employee of, the Attorney General or the State Clients”; "Special counsel shall be engaged by the Attorney General solely on an independent contractor basis”; "Special Counsel shall, at its own expense, procure and maintain, during the term of this Agreement, malpractice insurance”; "Special Counsel agrees to indemnify and to hold the Attorney General and the State of Ohio harmless and immune from any and all claims for injury or damages arising from this Retention Agreement that are attributable to Special Counsel’s own actions or omissions or those of his/her partners, associates....”).